STATE of South Dakota, Plaintiff
and Appellee,

v.

Gerald L. DAVIDSON, Defendant
and Appellant.

No. 17467.

Supreme Court of South Dakota.

Considered on Briefs Dec. 5, 1991.

Decided Jan. 8, 1992.

Mark Barnett, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Al Arendt of Maher and Arendt, Pierre, for defendant and appellant.

PER CURIAM.

Gerald L. Davidson (Davidson) appeals his conviction for third offense driving while under the influence of alcohol (DWI). We affirm.

FACTS

At approximately 9:00 p.m. on the evening of July 27, 1990, Troy Poitra (Poitra), a patrolman for the Cheyenne River Sioux Tribe, was traveling about five miles north of Eagle Butte on a highway between Eagle Butte and Timber Lake, South Dakota. At that time, he saw Davidson's vehicle approach him at a rate of speed registering 73 miles per hour on his radar unit. Poitra pursued Davidson's vehicle and brought it to a stop. After approaching the vehicle, Poitra observed that Davidson's speech was slurred, that he had bloodshot eyes and that there was a strong odor of an

alcoholic beverage about his person. Poitra also saw an open twelve pack of beer on the floor of Davidson's car with cans missing from the twelve pack.

Poitra asked Davidson for his driver's license and, after some further questioning, Davidson admitted he had been drinking and was on his way home. Poitra asked Davidson if he was a tribal member or Indian and when Davidson said he was not, Poitra went back to his patrol car to radio state authorities for assistance.

After Poitra returned to Davidson's car, he asked Davidson to take some field sobriety tests. Davidson responded by telling Poitra he had just gotten out of jail for DWI and asked Poitra to let him go. Poitra again asked Davidson to get out of his car for the field sobriety tests. Davidson complied and Poitra proceeded to administer a "heel-to-toe test." Davidson lost his balance and refused to finish the test. Poitra then asked Davidson to do a "one leg lift test." Davidson initially stated he would take the test, then changed his mind and said he didn't want to take any more tests. Nevertheless, Davidson did agree to take a preliminary breath test (PBT) which registered .12 on the digital readout.

By this time, Jack Lane (Lane), a police officer for the city of Eagle Butte, had arrived on the scene. Poitra advised Lane of the field sobriety tests he had administered and the PBT. Lane took over and asked Davidson to perform some additional field sobriety tests. Davidson refused, using a profanity and again asking to be taken home. During this encounter, Lane observed that: Davidson smelled of alcoholic beverages; his eyes were bloodshot and his speech slurred; and, he staggered and had to hold onto a vehicle for balance. After Davidson refused the sobriety tests, Lane advised him he was under arrest for DWI and read him the implied consent warnings. Davidson indicated he would consent to the blood test and signed a card to that effect. He was subsequently trans-

ported to Timber Lake where blood was drawn for the test.

On September 26, 1990, state filed an information charging Davidson with one count of driving a vehicle with .10 percent or more by weight of alcohol in his blood (SDCL 32-23-1(1)), an alternative count of DWI (SDCL 32-23-1(2)), and additional misdemeanor counts of open container, speeding and failure to maintain proof of financial responsibility. Additionally, state filed a Part II information charging Davidson with third offense DWI (SDCL 32-23-4).

Davidson subsequently filed a series of motions to suppress evidence and to dismiss the charges against him, challenging the legality of his arrest and the admission of the blood test results obtained incident to that arrest. All of Davidson's motions were denied by the trial court and Davidson's court trial proceeded on February 4, 1991. During trial, Davidson renewed his objections to the legality of his arrest and the admission of the blood test evidence. All evidence was submitted to the trial court by stipulation subject to Davidson's objections. At the close of trial, the trial court found Davidson guilty of one count of DWI (SDCL 32-23-1(1)). Davidson subsequently admitted the allegations of the Part II information charging third offense DWI and a judgment was entered accordingly.[1] Davidson appeals.

## ISSUE

DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING DAVIDSON'S MOTIONS TO SUPPRESS THE RESULTS OF HIS BLOOD TEST AS EVIDENCE?

To disturb a trial court's ultimate decision concerning the suppression of evidence, "this court must find that an abuse of discretion has occurred. This refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *State v. Baysinger*, 470 N.W.2d 840, 843 (S.D.1991) (citations omitted). Here, Davidson essentially argues

1. State dismissed the balance of the misdemeanor charges that were contained in the information.

the trial court abused its discretion in refusing to suppress the results of his blood test because the blood withdrawn for the test was not withdrawn incident to a lawful arrest. *See, State v. Spry,* 87 S.D. 318, 207 N.W.2d 504 (1973) (*lawful* arrest required prior to invocation of law on implied consent to withdrawal of blood and for admission of blood test results into evidence). Davidson contends his arrest was unlawful because neither officer Poitra nor officer Lane had authority to arrest him as law enforcement officers or as citizens making a citizen's arrest. We disagree.

In *State v. Assman,* 386 N.W.2d 492 (S.D.1986), this court held that a tribal police officer who is not cross-deputized by a county is not a "law enforcement officer" as defined by SDCL 23-3-27. Therefore, *Assman* concluded that a tribal police officer is not empowered to lawfully arrest a non-Indian for DWI or to request that a non-Indian submit to a blood test pursuant to the implied consent statute at SDCL 32-23-10. *Id.* Similarly, Poitra has not been cross-deputized by a county and, under *Assman,* it is clear he could not lawfully arrest Davidson or request that Davidson submit to a blood test to the extent he attempted to act in the capacity of a "law enforcement officer."

■ However, *Assman* also made clear that a tribal police officer is empowered to make a valid citizen's arrest just as any other citizen of the state of South Dakota. SDCL 23A-3-3 provides in pertinent part that, "[a]ny person may arrest another ... [f]or a public offense, other than a petty offense, committed or attempted in his presence[.]" In discussing the, "in the presence" requirement of the law enforcement officer's arrest statute, this court recently stated that, "for an arrest to be valid under SDCL 23A-3-2(1), the arresting officer must become aware, as a result of his sensory perceptions, of acts or circumstances sufficient to give him probable cause to believe that a defendant is com-

mitting a criminal offense in his presence." *Baysinger,* 470 N.W.2d at 845. Applying this same standard in this case, there were clearly sufficient facts that occurred within Poitra's presence to support his valid and legal citizen's arrest of Davidson for DWI.

Poitra stopped Davidson for speeding. After the stop, he observed Davidson's slurred speech, his bloodshot eyes and the odor of an alcoholic beverage on his person. Poitra also saw the open twelve pack of beer in Davidson's car and heard Davidson's admissions that he had been drinking and that he had just gotten out of jail for DWI. In addition, Poitra observed Davidson's lack of balance during a field sobriety test and his failure of the PBT. Clearly these facts were sufficient to warrant a reasonable belief by Poitra that Davidson had driven his vehicle while under the influence of alcohol and were, therefore, sufficient to support a legal citizen's arrest of Davidson by Poitra. *See, Baysinger, supra* (probable cause to arrest exists where facts and circumstances are sufficient to warrant belief by a man of reasonable caution that suspect has committed an offense).

■ Although Davidson asserts Poitra never arrested him because he never told him he was under arrest and because he never had the intent to arrest him, the trial court concluded that Poitra did arrest Davidson because Davidson was not free to leave while in Poitra's presence and because Poitra delivered Davidson to Lane, the nearest available law enforcement officer, as required by SDCL 23A-4-1 [2]. These conclusions are amply supported by the record. Poitra testified during the suppression hearing that Davidson had stated he wanted to go home but Davidson was not free to leave and he had communicated that fact to Davidson. Poitra also testified that Davidson was not in any condition to safely drive his vehicle and that officer Lane, who subsequently assisted in the arrest, was the nearest state law enforce-

---

2. SDCL 23A-4-1 provides in pertinent part:
Any person, other than a law enforcement officer, making an arrest shall, without unnecessary delay, take the arrested person be-

fore the nearest available committing magistrate or deliver him to the nearest available law enforcement officer.

ment officer. Davidson himself testified that at the time Poitra was at the scene he knew he could not leave and knew that his liberty had been significantly restricted.

The above testimony is clearly sufficient to support the trial court's conclusion that Poitra did arrest Davidson. That Poitra did not formally advise Davidson he was under arrest is of no moment as this court has held that the failure to formally inform a suspect he is under arrest does not vitiate the legal effect of a defacto arrest where the officer takes the suspect into his physical custody and control at the scene. *State v. Buckingham*, 90 S.D. 198, 240 N.W.2d 84 (1976). Moreover, "arrest" is defined as, "the taking of a person into *custody* so that he may be held to answer for the alleged commission of a public offense." SDCL 23A–3–1 (emphasis added). "The test of custody or non-custody is whether, under the totality of the circumstances, a reasonable person would not believe himself free to go." *State v. Corder*, 460 N.W.2d 733, 736 (S.D.1990) (citations omitted). Here, given Davidson's own testimony that he knew he was not free to leave, there can be little doubt that he was under arrest from the moment Poitra refused his request that he be allowed to go home.[3]

Based upon the above analysis, Poitra did make a valid and lawful citizen's arrest of Davidson as allowed by *Assman*. When officer Lane appeared on the scene, he then advised Davidson of the implied consent warnings and requested his submission to the blood test. That Lane was acting outside his municipal jurisdiction when he read the warnings is of no consequence. This court held in *State v. MacDonald*, 260 N.W.2d 626 (S.D.1977) that a municipal police chief fit the statutory definition of a "law enforcement officer", for purposes of qualification, to give the implied consent warnings despite the fact the DWI arrest occurred outside the municipal jurisdiction of the police chief.[4]

Based upon the foregoing analysis, both prongs for admission of Davidson's blood test results were met in this case. First, Davidson was lawfully arrested by Poitra who made a valid citizen's arrest despite the fact he is a tribal police officer normally lacking jurisdiction over non-Indians. Secondly, the implied consent warnings and request that Davidson take the blood test came from Lane, a "law enforcement officer" as defined by SDCL 23–3–27 and *MacDonald*. Accordingly, there was no abuse of discretion by the trial court in refusing to suppress the blood test results as evidence. *Cf., Assman, supra* (where tribal officer may have made valid citizen's arrest of DWI suspect but was *not* a, "law enforcement officer," qualified to administer implied consent warnings, trial court erred in failing to suppress evidence relating to suspect's refusal to submit to blood test).

Affirmed.

MILLER, C.J., and WUEST, HENDERSON, SABERS and AMUNDSON, JJ., participating.

---

**3.** The admission of any statements Davidson may have made after this point in time without a *Miranda* warning has not been raised as an issue in this appeal.

**4.** It should also be noted that any requirement in SDCL 32–23–10 that the implied consent warnings be given by the *arresting* officer has been abrogated. 1989 S.D.Sess.L. ch. 274, § 1.