1997 SD 47
**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Tho Ngoc NGUYEN, Defendant and Appellant.**

**No. 19684.**

Supreme Court of South Dakota.

Argued March 24, 1997.

Decided April 30, 1997.

Mark Barnett, Attorney General, Timothy Bartlett, Assistant Attorney General, Pierre, for Plaintiff and Appellee.

Nichole Ann Carper, Minnehaha County Public Defender, Sioux Falls, for Defendant and Appellant.

GILBERTSON, Justice.

[¶ 1.] Tho Nguyen (Nguyen) appeals judgment and sentencing from his conviction of vehicular homicide. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On December 12, 1995, at approximately 5:30 a.m., two vehicles hit head-on near an intersection on the edge of Sioux Falls. The driver of one car, Laurence Metz, was pronounced dead on arrival at a local hospital. The driver of the other vehicle, Nguyen, was taken to the hospital for treatment of injuries.

[¶ 3.] Weather and road conditions were generally clear, and the collision occurred in a well-lit area of Rice Street just east of Interstate 229. Both cars were traveling with their headlights on. Eyewitness and expert testimony established that Nguyen's vehicle abruptly crossed the center line into the path of Metz's vehicle, causing the collision. Sixteen unopened cans of beer in a 24-can "suitcase" container were found in the back seat of Nguyen's vehicle, and one of the cans had been damaged, spilling half of its contents inside the car. No empty beer cans were found in the vehicle or at the crash scene. The odor of an alcoholic beverage was detected in the car and on Nguyen's breath.

[¶ 4.] A police officer was instructed to follow Nguyen's ambulance to the hospital for the purpose of collecting a blood sample for blood alcohol analysis. The city's crime scene response van arrived at the crash site approximately 6:30 a.m., after all the ambulances and fire trucks had left. The scene was secured for several hours while investigators collected evidence.

[¶ 5.] Nguyen, who is a Vietnamese immigrant, had difficulties with the English language which limited his communication with emergency medical personnel and police.

Approximately one hour after Nguyen arrived at the hospital for treatment, a nurse withdrew a sample of Nguyen's blood. It is undisputed that the blood draw was requested by the officer and was taken for law enforcement purposes, not medical treatment. It also is undisputed that at the time his blood was drawn, Nguyen was not advised of his right to refuse the blood draw (implied consent warning), was not asked for his consent to withdraw his blood, and was not told he was under arrest. No interpreter was present in the emergency room or at the time of the blood draw. An interpreter was present later that morning when police questioned Nguyen in his hospital room about the accident and informed him he was under arrest.[1]

[¶ 6.] Two tests were conducted on the blood sample. One yielded a blood alcohol level of .1314 percent, and the other a reading of .1262 percent. A motion to suppress the blood evidence was made during trial, and heard outside the presence of the jury. The trial court denied Nguyen's motion to suppress the blood alcohol test results, but prohibited the prosecution from mentioning the statutory presumptions contained in SDCL 32–23–7.[2] Nguyen was convicted of vehicular homicide, and was sentenced to 15 years in prison.

[¶ 7.] Nguyen appeals his conviction, raising the following issues:

1. Whether the blood alcohol test results were properly admitted where the Defendant's consent was not obtained prior to the test and the implied consent

warning was not read to the Defendant prior to the taking of the sample?

2. Whether the blood sample was taken pursuant to a lawful arrest as defined by SDCL 32–23–10?

3. Whether, in the absence of the blood alcohol results, there was sufficient evidence for conviction of the Defendant on the charge of vehicular homicide?

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether the blood alcohol test results were properly admitted where the Defendant's consent was not obtained prior to the test and the implied consent warning was not read to the Defendant prior to the taking of the sample?**

[¶ 9.] We review the trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. McGarrett*, 535 N.W.2d 765, 767 (S.D.1995); *State v. Almond*, 511 N.W.2d 572, 574 (S.D. 1994); *State v. Johnson*, 509 N.W.2d 681, 683 (S.D.1993). An abuse of discretion occurs only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached the same conclusion. *Schuldies v. Millar*, 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95. Evidentiary rulings made by the trial court are presumed correct. *State v. Oster*, 495 N.W.2d 305, 309 (S.D.1993).

[¶ 10.] It is well settled that a state may, within constitutional limits, force an individual to submit to a test of bodily fluids,

1. Nguyen also was provided an interpreter at trial.

2. In any criminal prosecution for a violation of § 32–23–1 relating to driving a vehicle while under the influence of intoxicating liquor, or a violation of § 22–16–41, the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, breath, or other bodily substance shall give rise to the following presumptions:
   (1) If there was at that time five hundredths percent or less by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;
   (2) If there was at that time in excess of five hundredths percent but less than ten hun-

dredths percent by weight of alcohol in the defendant's blood, such fact shall not give rise to any presumption that the defendant was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant;
   (3) If there was at that time ten hundredths percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.
Percent by weight of alcohol in the blood shall be based upon milligrams of alcohol per 1.0 cubic centimeters of whole blood or 2100 cubic centimeters of deep lung breath.

so long as the sample taken is 1) incident to a lawful arrest, 2) taken by a reliable and accepted method, 3) in a medically approved, reasonable manner, and 4) with probable cause to believe the evidence sought, exists. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *see also South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

[¶ 11.] The Legislature has extended an additional protection to motor vehicle operators through the implied consent statute by providing drivers with a qualified right to refuse the withdrawal of their blood for a determination of alcohol content. *State v. Hartman*, 256 N.W.2d 131, 135 (S.D.1977). Because the implied consent right is a creature of statute, it is subject to the rules of statutory interpretation.

[¶ 12.] Matters of statutory construction present questions of law which we review de novo. *State v. Karp*, 527 N.W.2d 912, 913 (S.D.1995). "A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." 2A Sutherland, *Statutes and Statutory Construction*, § 46.05 (5th ed 1992). When we determine the intent of a statute, we look at the statute as a whole, as well as enactments relating to the same subject. *Kayser v. S.D. State Elec. Comm'n*, 512 N.W.2d 746, 747 (S.D.1994) (citation omitted).

[¶ 13.] The implied consent statute, SDCL 32–23–10, provides:

Any person who operates any vehicle in this state is considered to have given his consent to the withdrawal of blood or other bodily substance and chemical analysis of his blood, breath or other bodily substance to determine the amount of alcohol in his blood and to determine the presence of marijuana or any controlled drug or substance.

The person shall be requested by the officer to submit to the withdrawal of blood or other bodily substance for chemical analysis or chemical analysis of his breath and shall be advised by the officer that:

(1) If he refuses to submit to the withdrawal or chemical analysis, no withdrawal or chemical analysis may be required unless he has been arrested for a third, fourth or subsequent violation of § 32–23–1, constituting a felony offense under § 32–23–4 or 32–23–4.6;

(2) If he refuses to submit to the withdrawal or chemical analysis, his driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 he pleads guilty to a violation of § 32–23–1 prior to a revocation order being issued; and

(3) He has the right to have a chemical analysis performed by a technician of his own choosing at his own expense, in addition to the test requested by the officer.

[¶ 14.] We have considered the sanctions for failure to provide the implied consent warnings in previous cases. When a defendant is tried on a charge of driving under the influence, we have held that where the implied consent has not been given, instruction on the statutory presumptions contained in SDCL 32–23–10 is reversible error.[3] *State v. Parker*, 444 N.W.2d 42, 45 (S.D. 1989); *see also Hartman*, 256 N.W.2d at 135 n. 12. However, when there are felony homicide charges involving alcohol and the operation of a motor vehicle, we have held that it is sufficient deterrent to police misconduct to deny the State its right to revoke the driver's license and to make it forfeit the statutory presumptions of SDCL 32–23–7. *State v. Tucker*, 533 N.W.2d 152 (S.D.1995) (vehicular homicide); *State v. Big Head*, 363 N.W.2d 556 (S.D.1985) (vehicular homicide); *Hartman*, 256 N.W.2d 131 (second-degree manslaughter).

[¶ 15.] Nguyen argues that the loss of the statutory presumptions did not work as a sanction against the State in his case. He argues that the presumptions, taking into account his blood alcohol results of .1314 percent and .1262 percent and the error fac-

---

3. In the instant case, the State dismissed charges of driving under the influence of an alcoholic beverage (SDCL 32–23–1(2)) and driving with more than 0.10 percent alcohol by weight in the blood (SDCL 32–23–1(1)) prior to trial.

tor of plus or minus 10 percent, would have worked in his favor, rather than against him. Despite three opportunities at trial, however, Nguyen did not object to loss of the presumptions or request a jury instruction on them. He appears to now argue that while the statutory presumption of being under the influence per SDCL 32–23–7(3) was properly kept from the jury, the presumption of not being under the influence, SDCL 32–23–7(1) and no presumption, SDCL 32–23–7(2) should have been provided to the jury for guidance in its deliberations. Because Nguyen failed to raise this issue before the trial court, we will not address it here; it is deemed waived. *State v. Bale*, 512 N.W.2d 164, 167–68 (S.D.1994) (Wuest, J., concurring in result). As such, we continue to adhere to the holdings of *Hartman, Big Head* and *Tucker*, that the implied consent warning does apply to vehicular homicide arrests, and that the trial court applied the proper remedy for the State's failure to substantially comply with the statute.[4]

[¶ 16.] Based on the applicable statutes, we have never held that suppression of the blood evidence was the proper sanction for failure to comply with the implied consent statute. In prior felony cases, we have determined the penalties of 1) prohibiting the State from revoking the license of the driver, and 2) refusing to permit the use of the statutory presumptions at trial, sufficiently deter police from seizing blood evidence without the implied consent warning. *Tucker*, 533 N.W.2d at 155–56. The trial court properly applied those sanctions in the case at bar.

**[¶ 17.] 2. Whether the blood sample was taken pursuant to a lawful arrest as defined by SDCL 32–23–10?**

[¶ 18.] Nguyen alleges the blood evidence was inadmissible because it was not seized incident to a lawful arrest. Nguyen argues that the arrest was unlawful because at the time the police officer instructed the nurse to take a blood sample, he had made no decision to arrest Nguyen.

[¶ 19.] The trial court made specific findings that the officer made the decision to arrest Nguyen at 7:04 a.m., and the blood draw was taken 10 minutes later, at 7:14 a.m. A trial court's findings of fact will not be disturbed unless they are clearly erroneous. *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D. 1995). Under this standard, we will not disturb the trial court's findings unless, in light of all the evidence, we are firmly and definitely convinced a mistake has been made. *Cordell v. Codington County*, 526 N.W.2d 115, 116 (S.D.1994). There is ample evidence in the trial testimony to support the trial court's findings.

[¶ 20.] We give the trial court's conclusions of law no deference under the de novo standard of review. *Id.* Nguyen argues that the implied consent statute requires that the decision to arrest be made before the blood draw is requested. Nguyen cites *State v. Assman*, 386 N.W.2d 492 (S.D.1986), as authority for this proposition. This reliance is misplaced. Our decision in *Assman* addressed the implied consent statute as it appeared at that time[5] and in the context of

---

4. The State argues that the implied consent statute does not apply to felonies like vehicular homicide, and upon that independent basis, there is no reason to overturn the defendant's conviction. *See Hartman*, 256 N.W.2d at 137–38 (Porter, J., concurring specially). This was not raised before the trial court, nor was it the basis upon which the trial court denied Nguyen's motion to suppress. The State has not filed a notice of review concerning this argument and thus it is not properly before us for appellate review. As such, we express no opinion on it, and this question waits for a future case to properly address it.

5. SDCL 32–23–10 provided:
   Any person who operates any vehicle in this state is considered to have given his consent to a chemical analysis of his blood, breath or other bodily substance to determine the amount of alcohol in his blood as provided in § 32–23–7, and to determine the presence of marijuana or any controlled drug or substance, provided that the test is administered at the direction of a *law enforcement officer* having lawfully arrested the person for a violation of § 32–23–1.
   The person shall be requested by *the officer* to submit to the analysis and shall be advised by *the officer* that:
   (1) If he refuses to submit to the chemical analysis, none may be given;
   (2) If he refuses to submit to the chemical analysis, his driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 he pleads guilty to a violation of § 32–

defining the term "law enforcement officer" as it then appeared in that statute. In any event, there is nothing in our current statute or our case law which requires that the decision to arrest be made before the blood sample is requested.

[¶ 21.] The record reflects, and the trial court made a finding, that the blood draw was administered after the decision was made to arrest Nguyen. In addition, the trial court properly concluded there was probable cause for arrest, based on its findings that the officer was aware of the nature of the collision, the presence of beer cans in Nguyen's vehicle, the odor of an alcoholic beverage, and the death of the other driver. *See Schmerber*, 384 U.S. at 789–71, 86 S.Ct. at 1834–36, 16 L.Ed.2d at 918–20.

[¶ 22.] The fact that Nguyen was not informed he was under arrest until two hours after his arrival in the hospital is of no moment. "[T]he failure to formally inform a suspect he is under arrest does not vitiate the legal effect of a defacto arrest where the officer takes the suspect into his physical custody and control at the scene." *State v. Davidson*, 479 N.W.2d 513, 516 (S.D.1992) (citing *State v. Buckingham*, 90 S.D. 198, 240 N.W.2d 84 (1976) (reversed on other grounds)). Nguyen was arrested in the hospital within two hours of his admission to the emergency room. A review of the record—which shows that the crash site was preserved as a crime scene from the outset, that an officer followed the ambulance to the hospital with instructions to get a blood draw, and that the officer commenced preparing an arrest report ten minutes prior to the blood test—objectively demonstrates that the police intended to place Nguyen into immediate custody.

[¶ 23.] We hold that the blood sample was taken incident to a lawful arrest.[6]

[¶ 24.] 3. **Whether, in the absence of the blood alcohol results, there was sufficient evidence for conviction of the Defendant on the charge of vehicular homicide?**

[¶ 25.] In light of our holdings on issues 1 and 2, it is unnecessary to reach this issue.

[¶ 26.] SABERS, AMUNDSON and KONENKAMP, JJ., concur.

[¶ 27.] MILLER, C.J., concurs in result.

MILLER, Chief Justice (concurring in result).

[¶ 28.] I concur in result but write specially to disavow the majority's application of the improper, extra-statutory protections of the implied consent law (SDCL 32-23-10) to a charge of vehicular homicide.

[¶ 29.] By its own terms, the implied consent law specifically exempts felony conduct from the statutory protections. SDCL 32-23-10(1). A driver arrested for a felony DUI violation is not entitled to refuse law enforcement's request for a blood sample. *Id.*[7] The right to refuse is reserved for misdemeanor offenses. *See* SDCL 32-23-2 and –3. The majority, however, contends that the statutory protections provided by the implied consent statute are also available to a driver arrested for vehicular homicide, a felony.[8] Such a strained interpretation creates an absurd result. It results in the denial of the right to refuse a request for a blood sample to a driver who has committed a third offense DUI (Class 6 felony) without injury to persons or property, but at the same time

23–1 prior to a revocation order being issued; and

(3) He has the right to have a chemical analysis performed by a technician of his own choosing at his own expense, in addition to the test requested by *the officer*.

*Id.* at 493 n. * (emphasis original).

6. Subsequent cases interpreting *Schmerber* have held that "incident to" does not equate with obtaining the evidence after an arrest. *See Rawlings v. Kentucky*, 448 U.S. 98, 110–11, 100 S.Ct. 2556, 2564–65, 65 L.Ed.2d 633, 645–46 (1980) (search preceding formal arrest qualifies as incident to arrest where probable cause existed for the search); *United States v. Chapel*, 55 F.3d 1416, 1420 (9th Cir.1995) (an arrest is not a constitutional prerequisite for the nonconsensual taking of an accused's blood without a warrant).

7. A third-offense DUI conviction is a Class 6 felony. SDCL 32-23-4. A subsequent offense is a Class 5 felony. SDCL 32-23-4.6.

8. Vehicular homicide is a Class 4 felony. SDCL 22-16-41.

affords a driver arrested for vehicular homicide (Class 4 felony), which has resulted in the death of another human being, all the protections and benefits of the implied consent statute. *See State v. Hartman,* 256 N.W.2d 131, 138 (S.D.1977) (Porter, J., concurring specially).

[¶ 30.] The legislature surely did not intend to extend the statutory protections of the implied consent law to a felony more severe than those specifically exempted from the statute. *See State v. Washington,* 537 N.W.2d 380, 382 (S.D.1995) (quoting "[I]n construing statutes together it is presumed that the legislature did not intend an absurd or unreasonable result." (citation omitted)). A plain, commonsense reading of the implied consent law reveals that SDCL 32–23–10 applies only to misdemeanor driving under the influence offenses, not felonies. *See Delano v. Petteys,* 520 N.W.2d 606, 608 (S.D.1994) (noting statutes are to be accorded their plain meaning and effect).

[¶ 31.] The implied consent statute, found in SDCL ch 32–23, applies to the offense of driving under the influence. Vehicular homicide is defined and governed by SDCL ch 22–16. When the legislature intended Chapter 32–23 to apply to a crime other than driving under the influence, it expressly included the crime in the statutory language. *See* SDCL 32–23–7 (expressly including SDCL 22–16–41 (vehicular homicide) in statute listing presumptions for intoxication). The implied consent statute does not reference any crime other than driving under the influence.[9] This omission by the legislature evidences its clear intent to apply the statutory rights of the implied consent law only to driving under the influence offenses, not vehicular homicide.

[¶ 32.] The proper analysis for reviewing challenges to law enforcement's obtaining a blood sample from a driver charged with a vehicular felony is under the well-established factors set forth in *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908, 919–20 (1966). Under these factors, law enforcement may require a blood sample so long as the sample is taken (1) incident to a lawful arrest, (2) by a reliable and accepted method for obtaining such a sample, (3) in a reasonable, medically approved manner, and (4) where there is probable cause to believe the evidence sought exists. *Id.* Blood samples collected pursuant to these factors are not subject to the exclusionary rule. *Id.*

[¶ 33.] In this case, the blood draw from Nyugen was requested by law enforcement pursuant to a lawful arrest; drawn by a hospital nurse in a medically appropriate manner; and with the knowledge that a death resulted from the collision, the defendant's breath and person smelled of alcohol at the scene, and alcohol was found in the defendant's vehicle. The *Schmerber* factors were met. Based on law enforcement's compliance with the constitutional requirements, the blood sample was not subject to the exclusionary rule and was properly admitted into evidence.

---

**9.** Legislative history supports the interpretation that the legislature did not intend the implied consent statute to apply to vehicular homicide. The implied consent statute was established in 1959. 1959 SDSessL ch 264, § 1. The vehicular homicide statute was not enacted until 1983. 1983 SDSessL ch 176, § 1. "[W]e must assume that the legislature, in enacting a provision, had in mind previously enacted statutes relating to the same subject." *Meyerink v. Northwestern Public Service Co.,* 391 N.W.2d 180, 184 (S.D. 1986). When the legislature enacted the implied consent statute, it could not have contemplated its application to a statute not yet in existence. However, when the legislature enacted the vehicular homicide statute, it was aware of SDCL 32–23–10 and chose to not apply it to vehicular homicide.