#26102-aff in pt, rev in pt & rem-JKK

**2012 S.D. 57**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellant,

v.

TYLER TILLMAN,
VINCENT ROSSI, and
JESSICA WALLACE,                                Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA
* * * *

THE HONORABLE WARREN G. JOHNSON
Judge

* * * *

MARTY J. JACKLEY
Attorney General

TIMOTHY J. BARNAUD
Assistant Attorney General
Pierre, South Dakota                            Attorneys for plaintiff
                                                and appellant.

MATTHEW J. KINNEY
Spearfish, South Dakota                         Attorney for defendant
                                                and appellee Rossi.

BRADLEY T. BORGE
Rapid City, South Dakota                        Attorney for defendant
                                                and appellee Wallace.

DAVID L. CLAGGETT
Spearfish, South Dakota                         Attorney for defendant
                                                and appellee Tillman.

* * * *

ARGUED ON APRIL 18, 2012
OPINION FILED **07/11/12**

#26102

KONENKAMP, Justice

[¶1.]		A neighbor's complaint about marijuana directed Spearfish police officers to an apartment unit, where the officers smelled the odor of burnt marijuana outside the door. One tenant let the officers inside, but when the officers observed raw marijuana in plain view, another tenant demanded that the officers obtain a search warrant before they conducted any search. While the officers sought a warrant, they secured the apartment and detained all the tenants at the police station. On a motion to suppress, the circuit court found that the officers had probable cause to arrest two of the three tenants and search their apartment, but the detention at the station was unreasonable and violated their constitutional rights. The court suppressed all evidence. We granted an intermediate appeal to review the suppression order.

### Background

[¶2.]		On September 13, 2010, the Spearfish Police Department dispatched Corporal Verla Little and Officer Patrick Johnson to an apartment house at 740 University Street in response to a neighbor's complaint about the smell of burning marijuana from Unit 4. When the officers entered the house, they went upstairs toward Unit 4, where they too could smell burnt marijuana. They knocked, and Vincent Rossi opened the door. Rossi permitted the officers to enter. They asked Rossi if there was anyone else in the apartment. He went back and got Jessica Wallace. The officers then asked Wallace and Rossi if anyone else lived in the apartment. Wallace told the officers that her boyfriend, Tyler Tillman, also lived there, but was not home at the time.

-1-

[¶3.] While the officers were inside the apartment, Corporal Little observed a rolled up towel by the entry door on the floor, which she knew to be commonly used to keep the smell of marijuana from drifting out of a room. She also observed a small amount of raw marijuana on a dresser and what she suspected to be burnt marijuana residue. Corporal Little noticed several bottles of air freshener, which she knew from her training and experience were used to mask the odor of burning marijuana. Officer Johnson also made several observations, namely, some rolling papers next to the television. Rossi claimed that he rolled his own cigarettes, but could not produce smoking tobacco when asked. Officer Johnson saw a package of commercial cigarettes on the table.

[¶4.] Corporal Little and Officer Johnson advised Rossi and Wallace that they received a complaint that someone smelled the odor of burnt marijuana. Both denied using any illegal substance. Officer Johnson asked Rossi if there were any drugs in the apartment and requested a consent to search. Wallace, as the leaseholder, asked that the officers obtain a search warrant. After Wallace refused consent, the officers chose to detain Rossi and Wallace and secure the scene while they obtained a warrant. Neither one was formally arrested. But the officers searched them for weapons, handcuffed them, and placed them in the back of the patrol cars. To secure the scene, Officer Candi Birk stayed outside the apartment unit to prevent anyone from entering.

[¶5.] At 1:45 p.m., Officer Johnson and Corporal Little transported Wallace and Rossi to the police station and placed them in individual holding rooms. Officer Johnson began the process of obtaining a search warrant. This was his first time

preparing a warrant affidavit. Special Agent Steven Ardis and Detective Jason Deneui helped Officer Johnson by reviewing the affidavit after it was prepared. Although much of the language he used was boilerplate, Officer Johnson took three hours and nine minutes to fax a completed warrant affidavit and other documents to Magistrate Judge Michelle Percy. Wallace and Rossi remained detained at the station. At 4:17 p.m., Tillman was detained when he returned to the apartment, and he too was taken to a holding room at the station.

[¶6.]     Judge Percy granted the warrant request, and, at 5:45 p.m., the warrant was executed. In addition to marijuana, the officers found psilocybin mushrooms and prescription drugs. Following the search, Agent Ardis returned to the station to interview Rossi, but first a urine sample was taken from him. The interview began at 6:30 p.m. Agent Ardis read Rossi his Miranda rights, and Rossi agreed to answer questions. He made several incriminating statements about the evidence in the apartment.

[¶7.]     Shortly after he concluded his interview with Rossi, Agent Ardis was told that the warrant did not include psilocybin mushrooms, prescription drugs, or cell phones. He recommended that those items be added to the search warrant as a precaution, after which, Officer Johnson called Judge Percy and made an oral amendment request. At 8:00 p.m., Judge Percy orally granted the amendment. The officers concluded the search of the apartment at 8:15 p.m.

[¶8.]     Around 8:00 p.m., Agent Ardis interviewed Tillman. Tillman waived his Miranda rights. He spoke with Agent Ardis and made incriminating statements about the evidence found in the apartment. He also provided a urine sample. The

interview concluded at 9:30 p.m. Agent Ardis then attempted to question Wallace. She declined to speak. All three were released at 10:00 p.m.

[¶9.] Rossi and Tillman were indicted for possession of a controlled drug or substance in violation of SDCL 22-42-5 and SDCL 22-3-3, and possession of marijuana (less than two ounces) in violation of SDCL 22-42-6. Wallace was indicted for possession of a controlled drug or substance with intent to distribute in violation of SDCL 22-42-2, and two counts of possession of a controlled drug or substance in violation of SDCL 22-42-5. Rossi, Tillman, and Wallace moved to suppress the evidence. At the hearing, the defendants collectively argued that the seizure of their persons and apartment violated their constitutional right against unreasonable searches and seizures. They relied on *Illinois v. McArthur*, in which the United States Supreme Court assessed the reasonableness of a home seizure pending the application for a search warrant. *See* 531 U.S. 326, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001).

[¶10.] The circuit court issued a memorandum decision, findings of fact and conclusions of law, and an order. In assessing the reasonableness of the officers' actions, the court applied the four-part test endorsed in *McArthur*. That test asks the following questions:

> 1. Did law enforcement officers have probable cause to believe that the apartment "contained evidence of a crime and contraband, namely, unlawful drugs"?
>
> 2. Did the officers have "good reason to fear that, unless restrained, [the defendants] would destroy the drugs before [the officers] could return with a warrant"?
>
> 3. Did the officers make "reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy"?

> 4. Given the nature of the intrusion, did the officers impose a restraint for a period of time "no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant"?

*Id.* at 331-33, 121 S. Ct. at 950-51.

[¶11.] The circuit court found that the first two elements were "clearly satisfied in this case." But the last two were "much more difficult." On the third element, the court faulted the officers for removing the defendants from their apartment without formally arresting them. It opined that a lesser restraint would have been simply to prevent them from entering the apartment, as was done in *McArthur*. Because the court found the intrusion to be excessive, it ruled that the officers did not make reasonable efforts to reconcile their needs with the demands of personal privacy.

[¶12.] On the fourth element, the court noted that "the State did not provide any authority supporting a detention at a police station for at least five hours while police obtained a search warrant." Thus, it ruled that the officers failed to "act with the requisite diligence in obtaining the search warrant for the apartment[.]" The court held that the detention was unreasonable and that "[t]he seizure of these defendants violated their constitutional rights." Accordingly, the court suppressed "any evidence discovered and seized by law enforcement or any statements made by the defendants after Rossi and Wallace were initially detained by Corporal Little and Officer Johnson[.]"

**Analysis and Decision**

[¶13.] We granted the State's petition for intermediate appeal to consider whether the circuit court erred as a matter of law when it suppressed defendants' statements and the evidence seized under the search warrant.* We address each of the defendants' cases separately, as their circumstances differ. Rossi and Wallace were detained for eight hours, and Tillman, for five and one half hours. The officers questioned Rossi and Tillman while they were detained, but did not question Wallace because she refused to answer questions. Tillman was not at the apartment when the officers smelled the odor of burnt marijuana and saw marijuana in plain view.

### 1. Jessica Wallace

[¶14.] The circuit court suppressed all evidence pertaining to Wallace seized after she was initially detained. She made no statement after she was detained, so there was no statement to suppress. Therefore, we review only whether the court erred when it suppressed the evidence discovered during the search of the apartment after Wallace was detained. On that point, *McArthur* controls.

[¶15.] In *McArthur*, the defendant moved to suppress evidence taken from his trailer as the "fruit" of an unlawful seizure. On a tip that his home contained

---

\* "A motion to suppress for an alleged violation of a constitutionally protected right raises a question of law, requiring de novo review." *State v. Hess*, 2004 S.D. 60, ¶ 9, 680 N.W.2d 314, 319 (quoting *State v. Herrmann*, 2002 S.D. 119, ¶ 9, 652 N.W.2d 725, 728 (citations omitted)); *State v. Tofani*, 2006 S.D. 63, ¶ 24, 719 N.W.2d 391, 398. Findings of fact are reviewed under the clearly erroneous standard. *Tofani*, 2006 S.D. 63, ¶ 24, 719 N.W.2d at 398; *State v. Stevens*, 2007 S.D. 54, ¶ 5, 734 N.W.2d 344, 346.

contraband, police officers prevented McArthur from entering his trailer unaccompanied while the officers were obtaining a search warrant. *McArthur*, 531 U.S. at 328-29, 121 S. Ct. at 948-49. It was undisputed that preventing McArthur from entering his trailer was a seizure of property under the Fourth Amendment, and therefore, the Court assessed whether the restriction was reasonable. After applying its four-part test, the Court concluded that the restraint was reasonable and not in violation of McArthur's Fourth Amendment rights. *Id.* at 337, 121 S. Ct. 951.

[¶16.] Applying the four-part *McArthur* test here, we likewise conclude that the seizure was reasonable and constitutional. First, Officer Johnson and Corporal Little had probable cause to believe that the apartment contained evidence of a crime. Corporal Little spotted raw marijuana on a dresser in plain view. Both officers smelled the odor of burnt marijuana. Second, the officers had good reason to fear that unless they prevented Wallace from remaining in the apartment, she would destroy the evidence before the officers could return with a warrant. As the circuit court recognized, "[d]rugs and drug paraphernalia can easily be discarded or destroyed."

[¶17.] Third, although at first impression it might seem that the officers did not make reasonable efforts to reconcile their law enforcement needs (keep Wallace out of the apartment) with the general demands of personal privacy (right not to be de facto arrested and kept in a holding room at the police station), the circumstances of Wallace's detention did not implicate general privacy rights. Indeed, at the time the officers detained Wallace, they had probable cause to arrest

her based on their observation of an illegal substance in plain view. This is in contrast to *McArthur*, 531 U.S. at 329, 121 S. Ct. at 949, *United States v. Christie*, 570 F. Supp. 2d 657, 668-69 (D. N.J. 2008), and *United States v. Nguyen*, 2008 W.L. 346114 (D. Mass.) (unpublished), where the courts found compelling the fact that the officers did not physically restrain the defendants, but merely prevented them from accessing the property.

[¶18.] Here, on the other hand, we must account for the fact that the officers had probable cause to arrest Wallace, even if they did not effect a formal arrest. *See State v. Nguyen*, 1997 S.D. 47, ¶ 22, 563 N.W.2d 120, 125; *State v. Davidson*, 479 N.W.2d 513, 516 (S.D. 1992) (failure to formally arrest "does not vitiate the legal effect of a de facto arrest where the officer takes the suspect into his physical custody and control at the scene"). Moreover, Wallace's detention did not become unreasonable simply because the officers could have, as the circuit court declared, "easily imposed a restraint similar to that used in *McArthur* by removing [Wallace] from the apartment and not allowing [her] reentry until after the premises had been searched." Wallace's detention at the police station for eight hours in a room alone where she was not questioned was not unreasonable in light of her de facto arrest.

[¶19.] Finally, given the nature of the intrusion, the officers' restraint of Wallace was no longer than reasonably necessary for the officers, acting with diligence, to obtain a warrant. While the circuit court found that the officers did not act diligently, that conclusion related not to the fact that it took Officer Johnson approximately three hours to draft the warrant request, but to the court's finding

that the officers acted unreasonably when they detained Wallace at the police station. But as we recognized, that the officers could have restricted Wallace's access to the apartment as in *McArthur* does not make Wallace's restraint unreasonable. The nature of the intrusion must be viewed in light of the fact that the officers had probable cause to arrest her. Given these circumstances, the seizure was no longer than reasonably necessary.

[¶20.] In conclusion, because the officers (1) had probable cause to believe the apartment contained evidence of a crime, (2) reasonably feared that Wallace, if unrestricted, would destroy the evidence, (3) balanced their needs against Wallace's privacy rights, and (4) imposed a restraint that was not unreasonable given the circumstances, the seizure of the apartment did not violate Wallace's Fourth Amendment right against unreasonable searches and seizures. The court's order suppressing the evidence seized from the apartment as it relates to Wallace is reversed.

### 2. Vincent Rossi

[¶21.] As in Wallace's case, probable cause existed to arrest Rossi when the officers seized the apartment and obtained the search warrant. Therefore, our analysis of the *McArthur* elements applied to Rossi are the same: the officers (1) had probable cause to believe the apartment contained evidence of a crime, (2) reasonably feared that Rossi, if unrestricted, would destroy the evidence, (3) balanced their needs against Rossi's privacy rights, and (4) imposed a restraint that was not unreasonable given the circumstances. The seizure of the apartment and ultimate search did not violate Rossi's Fourth Amendment right against

unreasonable searches and seizures, and the court's suppression of the evidence seized during the search of the apartment is reversed.

[¶22.] Unlike Wallace, Rossi made incriminating statements while detained and gave a urine sample. Therefore, we must review the court's suppression of those statements and the urinalysis. It is undisputed that the officers had probable cause to arrest Rossi for the marijuana in plain view and the odor of burnt marijuana. Because the officers had probable cause to arrest Rossi, their detention of him at the police station was reasonable. *See Nguyen*, 1997 S.D. 47, ¶ 22, 563 N.W.2d at 125; *Davidson*, 479 N.W.2d at 516 (failure to formally arrest "does not vitiate the legal effect of a de facto arrest"). Under South Dakota law, Rossi was entitled to a probable cause determination within 48 hours. *See State v. Larson*, 2009 S.D. 107, ¶ 11, 776 N.W.2d 254, 258. He was released after eight hours. His detention was not illegal. Moreover, Rossi's statements were made after he voluntarily waived his Miranda rights. Because his statements and urinalysis were not the product of an illegal detention, we reverse the court's suppression order.

### 3. Tyler Tillman

[¶23.] The officers detained Tillman after he arrived at the apartment while it was being secured pending a search warrant. Tillman was denied access to the apartment, handcuffed, and brought to the police station. After several hours, Agent Ardis read Tillman his Miranda rights, obtained his waiver, and questioned him about the evidence found in the apartment. Tillman gave incriminating statements and provided a urine sample, and was released after five and one half

hours. The court suppressed Tillman's statements and the results of the urinalysis, as well as the evidence seized from search of the apartment.

[¶24.] Unlike Wallace and Rossi, Tillman was not at the apartment when the officers observed marijuana in plain view and smelled the odor of burnt marijuana. Moreover, at the time the officers detained Tillman, the warrant had yet to be issued. Therefore, the officers did not have probable cause to arrest Tillman. The only support the State offered for detaining Tillman was its need for officer safety and to secure the apartment.

[¶25.] Tillman's detention at the police station for five and one half hours while the officers obtained a warrant was unreasonable and unconstitutional. The officers had no probable cause to arrest him and no articulable suspicion to justify detaining him. *See United States v. Escobar*, 389 F.3d 781, 784 (8th Cir. 2004); *State v. Haar*, 2009 S.D. 79, ¶ 22, 772 N.W.2d 157, 167. Because the statements made by Tillman and the results of the urine sample were the product of his illegal detention, the court properly suppressed those statements and the urinalysis. It is of no legal consequence that Tillman voluntarily waived his Miranda rights, or that a valid search warrant authorized the seizure of his urine. "Under the doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the exclusionary rule generally makes inadmissible, evidence that is the product of an unconstitutional arrest." *State v. Spotted Horse*, 462 N.W.2d 463, 469 (S.D. 1990); *see also State v. Ludemann*, 2010 S.D. 9, ¶ 18, 778 N.W.2d 618, 623. "Once the exclusionary rule is triggered, 'indirect as well as direct evidence; physical tangible materials obtained either during or as a direct result of an unlawful invasion, come

at by exploitation of the illegal search; and testimony of matters observed during an unlawful invasion' are excluded." *Ludemann*, 2010 S.D. 9, ¶ 18, 778 N.W.2d at 623 (quoting *Spotted Horse*, 462 N.W.2d at 469). Tillman's incriminatory statements were a direct product of his illegal detention. Additionally, despite the fact that a valid warrant authorized Tillman's urinalysis, the results obtained were also the product of his illegal detention.

[¶26.]    The circuit court also suppressed the evidence seized as a result of the search of the apartment. *McArthur* controls because the apartment was seized and Tillman was detained without a warrant. *See* 531 U.S. at 330-31, 121 S. Ct. at 949-50. The first element asks: Did law enforcement officers have probable cause to believe that the apartment contained illegal substances? This is easily answered in the affirmative. Second, did the officers have good reason to fear that Tillman, if left unrestrained, would destroy the evidence before they could return with a warrant? The answer again is yes: if the officers would have allowed Tillman to enter the apartment, Tillman would have had unbridled access to the illegal substances throughout the apartment and the ability to destroy the evidence before the warrant could be executed.

[¶27.]    The next two *McArthur* elements are more problematic. Law enforcement officers must make "reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy." 531 U.S. at 332, 121 S. Ct. at 950. Here, the officers did not need to detain Tillman to keep the evidence in the apartment secure. They could have simply denied him access to the apartment. *See id.* at 329, 121 S. Ct. at 949 (did not arrest defendant, but merely prevented

unaccompanied access); *United States v. Legette*, 260 F. App'x 247, 251 (11th Cir. 2008) (detention in home for four hours, although probable cause existed for an arrest, found reasonable). Moreover, because there was no probable cause to arrest Tillman, detaining him at the police station was a significant intrusion of his privacy rights. On this element, the circuit court was correct in concluding that the officers failed to balance their need to keep the apartment secure against Tillman's right to be free from unreasonable seizures. Similarly, on the fourth element, given the nature of the intrusion — de facto arrest — the officers' detention and seizure of Tillman for five and one half hours was longer than reasonably necessary for the officers to obtain a warrant. Thus, the officers violated Tillman's Fourth Amendment rights under *McArthur*. *See* 531 U.S. at 337, 121 S. Ct. at 953.

[¶28.] Nonetheless, the remedy does not demand suppression of the evidence seized as a result of the search of the apartment. The officers searched the apartment under a valid search warrant, a fact Tillman does not dispute. Also, the information used to secure the warrant did not come from either Tillman's illegal detention or the illegal seizure of the apartment as it relates to Tillman. Rather, Officer Johnson secured the warrant based on information learned during his and Corporal Little's first encounter with Rossi and Wallace — the raw marijuana in plain view and the odor of burnt marijuana detected when they arrived at the apartment.

[¶29.] In *Segura v. United States*, police officers illegally entered an apartment, conducted a protective search, and stayed in the apartment until a warrant could be obtained. 468 U.S. 796, 801, 104 S. Ct. 3380, 3383, 82 L. Ed. 2d

599 (1984). A warrant was ultimately issued and evidence seized. Although the warrant was deemed valid, the evidence seized with the warrant was suppressed as "fruit" of the illegal initial entry. On appeal, the Supreme Court reviewed the limited question "whether drugs and the other items not observed during the initial entry and first discovered by the agents the day after the entry, under an admittedly valid search warrant, should have been suppressed." *Id.* at 804, 104 S. Ct. at 3385. Recognizing that evidence discovered as a direct result of an unconstitutional search or seizure "is plainly subject to exclusion," the Court explained that "[i]t has been well established for more than 60 years that evidence is not to be excluded if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint[.]'" *Id.* at 805, 104 S. Ct. at 3385 (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S. Ct. 266, 268, 84 L. Ed. 307 (1939)).

[¶30.] A home is sacrosanct "not primarily because of the occupants' possessory interests in the premises, but because of their privacy interests in the activities that take place within." *Id.* at 810, 104 S. Ct. at 3388. Indeed, "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 511, 19 L. Ed. 2d 576 (1967). Moreover, "a seizure affects only possessory interests, not privacy interests. Therefore, the heightened protection we accord privacy interests is simply not implicated where a seizure of premises, not a search, is at issue." *Segura,* 468 U.S. at 810, 104 S. Ct. at 3388.

[¶31.] Here, the *search* is not at issue, as it was indisputably based on a valid warrant. Further, none of the information Officer Johnson used to secure the

warrant related in any way to the seizure of the apartment. Had the officers never seized the apartment, "but instead conducted a perimeter stakeout to prevent anyone from entering the apartment and destroying evidence, the contraband now challenged would have been discovered and seized precisely as it was here." *See id.* at 814, 104 S. Ct. at 3390. The evidence seized was not the "fruit of the poisonous tree."

[¶32.] Tillman argues that the evidence must be suppressed "as a direct result of the constitutional violation." *See United States v. Song Ja Cha*, 597 F.3d 995, 1003 (9th Cir. 2010). In *Song Ja Cha,* although supported by a valid warrant, the evidence seized was suppressed because the police conduct was deliberate, systematic, and culpable. *Id.* at 1004-06. The court emphasized that the police conduct must be sufficiently deliberate that it can be deterred, and such review is based on an objective standard. Unlike the officers in *Song Ja Cha*, who denied the defendant access to his house for 26.5 hours while they nonchalantly delayed their application for a warrant, the conduct of the officers here was not "sufficiently culpable that . . . deterrence is worth the price paid by the justice system." *See id.* at 1004 (quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 702, 172 L. Ed. 2d 496 (2009)).

## Conclusion

[¶33.] We reverse (1) the order suppressing the evidence seized in the search of the apartment as against Wallace, Rossi, and Tillman and (2) the suppression of Rossi's statements and his urinalysis. We affirm the suppression of Tillman's statements and the results of the analysis of his urine.

#26102

[¶34.] Affirmed in part, reversed in part, and remanded.

[¶35.] GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.