Unified Judicial System

 

 
  STATE OF SOUTH DAKOTA,
Plaintiff and Appellee,
v.
ALAN GEORGE OLHAUSEN JR.,
Defendant and Appellant.
South Dakota Supreme Court
Appeal from the Second Judicial Circuit, Minnehaha County, SD
Hon. Judith K. Meierhenry, Judge
#20310--Affirmed
Mark Barnett, Attorney General
Ann C. Meyer, Assistant Attorney General, Pierre, SD
Attorneys for Plaintiff and Appellee.
Cynthia A. Howard, Minnehaha County Public Defender, Sioux Falls, SD
Attorneys for Defendant and Appellant.
Argued Oct 22, 1998; Opinion Filed Dec 9, 1998
KONENKAMP, Justice.
[Â¶1] We must decide if a tipster's warning to police of a "possible drug transaction" was sufficient to justify stopping an automobile to further investigate. Because the description the tip provided fit the car the deputy spotted and the dispatcher confirmed that a warrant was "associated with the vehicle," we conclude the stop and subsequent seizure of controlled substance was lawful. We affirm the circuit court's denial of the motion to suppress and the jury's verdict.
FACTS 
[Â¶2] On March 19, 1997, Alan Olhausen, Jr. drove his newly purchased, black 1994 BMW to Sioux Falls from his home in Worthington, Minnesota. The vehicle had yet to be registered in his name. He intended to register it in South Dakota because he was planning to move here. When he arrived, he stayed with a friend, Vilay Chantharath, overnight. The next day, Chantharath, Olhausen, Khan Lovan and an unidentified person decided to first drive to John Morrell's, where some of them needed to pick up their pay checks, and then all would go eat at a local restaurant. Lovan wanted to drive Olhausen's BMW. Olhausen agreed, and rode in the front passenger seat. On the way, Lovan turned onto a side street, exited the vehicle and went into a house. Who went in with him remains in dispute, but by all accounts Olhausen never entered the home. Lovan came back to the car and got money from Olhausen. Lovan then re-entered the house and shortly returned to the car, slipped into the driver's seat and headed for Morrell's.
[Â¶3] At the same time, someone telephoned the Minnehaha County Sheriff's Office to report a "possible drug transaction" occurring on East Rice Street, next to Haffner's. The caller described the car involved as a four-door, 1994 black BMW and gave its license plate number. A law enforcement officer in the area, Deputy James Hoekman, also received notice from the dispatcher that "there was a warrant associated with the vehicle and a subject by the name of Alan Olhausen had just left the scene there." A cursory description of Olhausen was included in the dispatch. On the way to the scene, Hoekman spotted the BMW and noticed that the front seat passenger, later identified as Olhausen, fit the description given by the dispatcher. On stopping the car, the deputy first asked Olhausen to identify himself. Olhausen gave his name. Hoekman had him step out of the vehicle, whereupon he was arrested on an outstanding traffic warrant. Next, Hoekman addressed Lovan. After he learned that Lovan had no valid driver's license, Hoekman asked him to exit the vehicle. When Lovan got out, Hoekman noticed "an 8-ball of white substance" in a plastic baggy on the right side of the seat where Lovan had been sitting. The baggy was not "flattened out," he recalled, as if someone had been sitting on it, but was a "distinct 8-ball." It was tested on the scene with a narcotics "field kit" and found to contain cocaine. Later, a search warrant was executed at the house Lovan had entered. Law enforcement found cocaine there and approximately $1000 in cash on the persons of two of the residents. Olhausen was charged with possession of a controlled substance and possession with intent to distribute a controlled substance.(fn1) 
[Â¶4] After a hearing, the circuit court denied Olhausen's motion to suppress the evidence obtained as a result of the traffic stop. At trial, Lovan testified they had gone to the house on East Rice Street to buy cocaine for Olhausen, and that Olhausen had given Lovan the money to make the purchase. Lovan told the jury he only went into the house because Chantharath was "tak[ing] too long" inside. It was at that time, according to Lovan, that Chantharath sent Lovan back to Olhausen to get money for the cocaine. Chantharath, however, testified that he never entered the house. Taking the stand in his own defense, Olhausen testified that he knew nothing about the drugs or any drug sale: "I was just about asleep" during the wait outside the house. The money he gave Lovan was a loan, he said. He insisted that if a drug transaction occurred, the purchase was for Lovan, not himself. The jury returned a verdict of guilty of possession of a controlled substance, but not guilty of possession with intent to distribute a controlled substance. Olhausen was sentenced to five years in the State Penitentiary with the execution of the sentence suspended, provided he serve 180 days in jail.
[Â¶5] On appeal, Olhausen asserts (1) he was stopped and seized without reasonable suspicion in violation of his Fourth Amendment rights under the United States Constitution and Article VI, Section 11 of the South Dakota Constitution, and (2) the State failed to corroborate Lovan's testimony in violation of SDCL 23A-22-8.
STANDARD OF REVIEW 
[Â¶6] We review a court's independent assessment of facts under the clearly erroneous standard.(fn2) See State v. Almond, 511 NW2d 572, 573 (SD 1994). Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo. Spenner v. City of Sioux Falls, 1998 SD 56, Â¶13, 580 NW2d 606, 610; see State v. Dreps, 1996 SD 142, Â¶8, 558 NW2d 339, 341.
ANALYSIS AND DECISION 


1. Investigatory Stop
[Â¶7] The Fourth Amendment of the United States Constitution and Article VI, Section 11 of the South Dakota Constitution protect individuals from unreasonable searches and seizures. The stop of an automobile is a seizure under the Fourth Amendment. Delaware v. Prouse, 440 US 648, 653, 99 SCt 1391, 1396, 59 LEd2d 660 (1979). To justify a stop, a law enforcement officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 US 1, 21, 88 SCt 1868, 1880, 20 LEd2d 889 (1968); see State v. Anderson, 331 NW2d 568 (SD 1983). An informant's tip may carry sufficient "indicia of reliability" to justify a Terry stop even though it fails to rise to the level of the probable cause needed for an arrest or search warrant. Alabama v. White, 496 US 325, 328, 110 SCt 2412, 2415, 110 LEd2d 301 (1990); State v. Lownes, 499 NW2d 896, 899 (SD 1993). "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." Anderson, 331 NW2d at 570 (quoting People v. Ingle, 36 NY2d 413, 420, 369 NYS2d 67, 74, 330 NE2d 39, 44 (1975) (citation omitted)).
[Â¶8] Based on these standards, we conclude that Deputy Hoekman had an articulable suspicion to justify stopping the car; therefore, the stop was reasonable under both our state and federal constitutions. First, the caller reported a "possible drug deal" on East Rice Street. The deputy had a description of the vehicle, and the license plate number. He also had been told the tipster reported that Alan Olhausen had just left the scene and gave a description of Olhausen. Hoekman spotted the black BMW near East Rice Street. The deputy was also informed by the dispatcher that there were warrants associated with the car. Hoekman was able to independently corroborate the tip and verify the information before he made the stop: The BMW fit the tipster's description, the license plate number matched the number reported by the tipster, and the car was located close to East Rice Street. Lastly, Hoekman testified that, as he drove by, he could see that the passenger in the front of the vehicle met the description given to him of Olhausen. The motion to suppress was properly denied.


2. Accomplice Testimony--Corroboration
[Â¶9] Under SDCL 23A-22-8, a criminal conviction is not supportable based on the uncorroborated testimony of an accomplice. This statute provides: "A conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof." Whether a person is an accomplice is either a "question of law for the court or a question of fact for the jury, depending on the ... evidence." State v. Busack, 532 NW2d 413, 415 (SD 1995) (citation omitted). If there is a material question of fact about the participation of a witness in the crime, then the question whether that person is an accomplice is decided by the jury. Id. If, on the other hand, there is no dispute regarding the witness's participation in the crime, then that person's status as an accomplice is a question of law for the court. Id. In this case, no one disagrees that Lovan was an accomplice; thus, the only question is whether his testimony was adequately corroborated.
[Â¶10] Where corroborative evidence tends to confirm the truth of accomplice testimony and demonstrate the guilt of the accused, the statutory mandate under Â§23A-22-8 is satisfied. State v. Reutter, 374 NW2d 617, 626 (SD 1985). The testimony of the accomplice need not be validated by evidence adequate to carry a conviction. Id. at 626 (citing State v. Grooms, 339 NW2d 318, 320 (SD 1983) (other citations omitted)). Circumstantial evidence may meet the burden of corroboration. State v. Phyle, 444 NW2d 380, 382 (SD 1989) (citing State v. Feyereisen, 345 NW2d 58, 60 (SD 1984)). Moreover, there is no requirement that every material fact testified to by the accomplice be corroborated. Reutter, 374 NW2d at 626. Whether evidence corroborates an accomplice's version of the facts is a question for the jury. State v. Sondreal, 459 NW2d 435, 439 (SD 1990) (citing Phyle, 444 NW2d at 382). Testimonial evidence alone, if believed by the jury, is sufficient to corroborate an accomplice's testimony. Phyle, 444 NW2d at 382.
[Â¶11] After receiving proper instructions on the necessity for corroboration of accomplice testimony, the jury convicted Olhausen. We can infer, then, that the jury chose to believe Lovan's version over the testimony of both Olhausen and Chantharath. Lovan's testimony, explaining how the drugs came to be in the vehicle, was sufficiently corroborated. Following Olhausen's arrest, officers found $416 in cash on his person, along with a large number of business cards and telephone numbers. Despite the contradiction surrounding who actually entered the house and purchased the substance, the record shows that Olhausen had cocaine in his car within arm's reach, which can establish constructive possession. Taking away Lovan's testimony, we are still left with this incontrovertible fact. Alone, it may not have been enough to convict him, but the jury was entitled to consider the totality of evidence and sort out the truth from the witnesses' conflicting renditions.
[Â¶12] Affirmed.
[Â¶13] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.
Footnotes
1.  SDCL 22-42-5 states in relevant part:


No person may knowingly possess a controlled drug or substance unless the substance was obtained directly or pursuant to a valid prescription ... . A violation of this section is a Class 4 felony. 
2.  The trial court never entered findings of fact and conclusions of law on the motion to suppress. In their appellate briefs, both sides refer to the trial court's letter decision of September 19, 1997, which sets forth its findings and ruling on the motion. No one objected to the lack of formal findings in this appeal, so we will proceed without them. However, we remind trial courts that entry of findings is imperative and failure to do so may result in remand. See generally State v. Holiday, 335 NW2d 332, 337-38 (SD 1983)(expressing preference for written findings).