2004 SD 85

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Lonnie Lee SCHOLL, Defendant and Appellant.**

**No. 23044.**

Supreme Court of South Dakota.

Considered on Briefs on April 26, 2004.

Decided June 30, 2004.

Lawrence E. Long, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Ronald A. Parsons, Jr. and Matthew T. Tobin of Johnson, Heidepriem, Miner, Marlow and Janklow, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] Lonnie Scholl appeals a circuit court order affirming his magistrate court conviction for one count of driving under the influence of alcohol (DUI). We affirm.

### FACTS

[¶ 2.] At approximately 10:30 p.m. on September 13, 2002, Sioux Falls Police Officer Brian Reinwald was on duty in his patrol car when he received a radio dispatch directing units in the area to respond to a report of a possible drunk driver on Westport Avenue. Dispatch advised that an informant called in to report seeing the driver "leaving Scarlet O'Hara's bar stumbling pretty badly and having problems getting into [his] Toyota Tacoma pickup."[1] The informant gave the license plate number of the vehicle which bore commercial plates from the State of Nebraska. The informant also described the vehicle as a blue Toyota pickup with a topper on it. The informant followed the vehicle from the bar onto Interstate 29 and then east on Twelfth Street and continued to update dispatch on the location of the vehicle until it turned onto Westport Avenue.

[¶ 3.] Within three or four minutes of receiving the initial dispatch, Officer Reinwald encountered the suspect vehicle in the location where the informant said it would be and began to pursue it.[2] Reinwald followed the vehicle for approximately eleven blocks, confirming that the license plate number, color and vehicle type all matched the informant's description. Although Reinwald did not observe any violations of the law, erratic driving or anything else leading him to believe that the driver was impaired, he stopped the vehicle solely on the basis of the informant information. After the stop Reinwald identified Scholl as the driver and, based upon his observations of Scholl, had him perform a series of field sobriety tests. The results of the tests led to Scholl's arrest for DUI. A blood test administered

---

1. The quoted language is from the trial court's findings of fact on a suppression motion. The findings are unchallenged in this appeal.

2. As Officer Reinwald encountered the vehicle, the informant mentioned to dispatch that he could see the officer's car and went on his way. The officer's police report later included the informant's name and telephone number and indicated that, according to dispatch, he was uncooperative and wished to be left out of the incident.

shortly after the arrest yielded a result of 0.227% by weight of alcohol in the blood.

[¶ 4.] After his indictment for DUI and prior to a court trial in magistrate court, Scholl moved to suppress all evidence obtained as a result of the stop of his vehicle on the basis that the stop violated the Fourth and Fourteenth Amendments to the U.S. Constitution and Article VI, Section 11 of the South Dakota Constitution. The motion was denied. Scholl was later convicted of DUI and sentenced to 120 days in the county jail with 100 days suspended and a fine of $650 plus costs and loss of driving privileges for one year. Scholl appealed his conviction to circuit court, again challenging the validity of the vehicle stop. The circuit court affirmed in an order entered October 21, 2003. Scholl now appeals to this Court.

ISSUE

[¶ 5.] **Did Officer Reinwald have a reasonable suspicion of a violation of law sufficient to support the stop of Scholl's vehicle?**

[¶ 6.] The requirement of a reasonable suspicion of a violation of law to support a traffic stop has been set forth as follows:

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Although this protection generally requires probable cause to search, "[t]he requisite level of suspicion necessary to effectuate the stop of a vehicle is not equivalent to probable cause necessary for an arrest or a search warrant." All that is required is that the police officer has "a reasonable suspicion to stop an automobile." Therefore, the factual basis needed to support a traffic stop is minimal.

While the stop may not be the product of mere whim, caprice or idol curiosity, it is enough that the stop is based upon "specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Under these standards, it is well established that a traffic violation, however minor, creates sufficient cause to stop the driver of a vehicle.

*State v. Chavez*, 2003 SD 93, ¶¶ 15–16, 668 N.W.2d 89, 95 (citations omitted). The reasonable suspicion necessary to support a traffic stop may be provided by an informant's tip.

An informant's tip may carry sufficient "indicia of reliability" to justify a [vehicle] stop even though it fails to rise to the level of the probable cause needed for an arrest or search warrant. "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity."

*State v. Olhausen*, 1998 SD 120, ¶ 7, 587 N.W.2d 715, 717–718 (citations omitted). The ultimate determination of the existence of a reasonable suspicion to stop a vehicle is a question of law reviewed de novo. *State v. Faulks*, 2001 SD 115, ¶ 8, 633 N.W.2d 613, 617.

[¶ 7.] This Court has considered a number of cases involving vehicle stops based upon informant tips. *See e.g. State v. Anderson*, 359 N.W.2d 887 (S.D.1984); *State v. Kissner*, 390 N.W.2d 58 (S.D. 1986); *State v. Czmowski*, 393 N.W.2d 72 (S.D.1986); *State v. Lownes*, 499 N.W.2d 896 (S.D.1993); *Graf v. State*, 508 N.W.2d 1 (S.D.1993); *Olhausen*, 1998 SD 120, 587 N.W.2d 715; *State v. Herrmann*, 2002 SD 119, 652 N.W.2d 725. Only a few of these cases, however, have involved a vehicle stop based *solely* upon an informant's tip. *See e.g. Kissner, supra; Czmowski, supra; Lownes, supra; Graf, supra.*[3] These

3. The remaining cases have involved vehicle stops based upon a tip *and* independent ob-

cases all predate the United States Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). While *J.L.* did not involve a vehicle stop, it did consider the validity of the search of a suspect at a bus stop based *solely* on an informant's tip that he was carrying a gun. In reaching its decision, the Supreme Court emphasized the "indicia of reliability" necessary for an anonymous tip to furnish reasonable suspicion for an investigatory stop. *See Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)(information provided by anonymous tip may be sufficiently reliable to justify an investigative stop). *Accord Lownes, supra.* The Court found such indicia lacking in *J.L.* stating, "All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L." *J.L.*, 529 U.S. at 271, 120 S.Ct. 1375.

[¶ 8.] In *United States v. Wheat*, 278 F.3d 722 (8thCir.2001), the Eighth Circuit Court of Appeals applied the reliability requirements of *J.L.* in the context of a vehicle stop. In *Wheat*, an informant traveling in Iowa used a cell phone to report another driver's erratic driving to a local police department. The informant described the other vehicle's color, make and model and gave the first three letters of its license plate number. He also provided the other vehicle's location and the direction in which it was moving. The informant complained that the other vehicle was "passing on the wrong side of the road, cutting off other cars, and otherwise being driven as if by a 'complete maniac.' " *Wheat*, 278 F.3d at 724. The informant

information was relayed to patrolling officers and, shortly thereafter, an officer found the subject vehicle stopped at an intersection in the location mentioned by the informant. As the driver turned, the officer stopped the vehicle immediately "without having observed any incidents of erratic driving." *Id.* at 724–25. The stop led to the arrest and conviction of a passenger in the vehicle for possession of cocaine.

■ [¶ 9.] In determining whether the informant's tip provided adequate cause for the vehicle stop in *Wheat*, the Eighth Circuit defined the test as follows:

> Whether an anonymous tip suffices to give rise to reasonable suspicion depends on both the *quantity* of information it conveys as well as the *quality, or degree of reliability,* of that information, viewed under the totality of the circumstances. [*White, supra* ]. "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.*

*Wheat,* 278 F.3d at 726 (emphasis added). The court looked to a number of factors to assess the quantity and quality of the informant information and found the following considerations integral to determining "whether an anonymous tip of erratic driving may justify an investigatory stop." *Id.* at 731.

> First, the anonymous tipster must provide a sufficient quantity of information, such as the make and model of the vehicle, its license plate numbers, its location and bearing, and similar innocent details, so that the officer, and the court, may be certain that the vehicle

servations by the arresting officer. *See e.g. Anderson, supra* (stop based on informant's tip and equipment violations directly observed

by arresting officer); *Herrmann, supra* (stop based on informant's tip and speeding violation directly observed by arresting officer).

stopped is the same as the one identified by the caller. The time interval between receipt of the tip and location of the suspect vehicle, though going principally to the question of reliability, may also be a factor here.

\* \* \*

■ The tip must also contain a sufficient quantity of information to support an inference that the tipster has witnessed an actual traffic violation that compels an immediate stop. A law enforcement officer's mere hunch does not amount to reasonable suspicion.

*Wheat*, 278 F.3d at 731–732.

[¶ 10.] With regard to assessing the quality or degree of reliability of an anonymous tip, the court observed that the "primary determinant of a tipster's reliability is the basis of his knowledge" and further observed that "in erratic driving cases the basis of the tipster's knowledge ... [a]lmost always ... comes from his eyewitness observations[.]" *Wheat*, 278 F.3d at 734. From this, the court concluded that, "an anonymous tip conveying a contemporaneous observation of criminal activity whose innocent details are corroborated is ... credible[.]" *Id.* at 735. As to the risk that an anonymous tip might be a fiction intended to cause trouble for another motorist, the court determined that the risk of false tips is slight compared to the risk of not allowing the police to immediately conduct investigatory stops of potentially impaired drivers. In that regard, the court noted that erratic and possibly drunk drivers pose an imminent threat to public safety, that failure to stop them immediately risks sudden and potentially devastating accidents and, therefore, there is a substantial government interest in effecting such stops as quickly as possible.

[¶ 11.] Based upon the above factors, the Eight Circuit reached the following conclusion as to the validity of the stop in *Wheat:*

> [W]e find that the initial stop of the vehicle in which Wheat was a passenger was not unreasonable under the totality of the circumstances. An anonymous caller provided an extensive description of a vehicle that, based on his contemporaneous eyewitness observations, he believed was being operated dangerously, and cited specific examples of moving violations. When Officer Samuelson caught up with the vehicle minutes later while it was stopped at an intersection, he corroborated all its innocent details, confirming that it was the one identified by the tipster. Within seconds after the vehicle resumed motion, Officer Samuelson effected an immediate investigatory stop, rather than allow it to proceed and potentially endanger other vehicles. Under the totality of the circumstances, he had reasonable suspicion to do so, and the stop was valid under the Fourth and Fourteenth Amendments.

*Wheat,* 278 F.3d at 737.

■ [¶ 12.] Employing a similar analysis here leads to a similar conclusion. The tipster [4] provided an extensive description of a vehicle that, based on his contempora-

---

4. It is notable that, in contrast with *J.L.* and *Wheat,* the tipster in this case was *not* completely anonymous. While it is not clear from the record whether his identity was communicated to the officer prior to the stop, his name and telephone number appeared in the officer's arrest report. In his concurrence in *J.L.,* Justice Kennedy noted the risks associated with anonymous tips: "If the telephone call is truly anonymous, the informant has not placed his credibility at risk and can lie with impunity. The reviewing court cannot judge the credibility of the informant and the risk of fabrication becomes unacceptable." *J.L.,* 529 U.S. at 274, 120 S.Ct. 1375 (Kennedy, J., concurring). Since the tipster in this case was not anonymous, these risks were not present here.

neous eyewitness observations, he believed was being operated dangerously. The description included its color, make and model and its Nebraska license plate number. The tipster also followed the vehicle and kept dispatch constantly updated on its location and bearing. These details provided a sufficient quantity of information for law enforcement to be certain that the vehicle stopped was the one identified by the tipster. When Officer Reinwald caught up with the vehicle within minutes of notification by dispatch in the location where the tipster said it would be, he corroborated all its innocent details, confirming that it was the one identified by the tipster. After corroborating these details, Officer Reinwald effected an investigatory stop rather than allow it to proceed and potentially endanger other vehicles.

[¶ 13.] In contrast with *Wheat*, the tipster here did not cite specific examples of moving violations that he observed. Rather, he reported only that he observed the suspect stumbling "pretty badly" while leaving the bar and also having problems getting into his vehicle. Courts have come to different conclusions as to the sufficiency of the cause for a vehicle stop based solely upon an informant's observations of the non-driving behavior of a suspect. In *State v. Miller*, 510 N.W.2d 638 (N.D. 1994), the North Dakota Supreme Court invalidated a traffic stop based upon an informant's report of a possible drunk driver who could "barely hold his head up" in the drive-up lane of a fast food restaurant. In *Stewart v. State*, 22 S.W.3d 646 (Tex.App.2000), the Texas Court of Appeals invalidated a stop based upon an informant's report of an intoxicated driver at a convenience store who fell down twice while getting into his vehicle. However, in *State v. Roberts*, 293 Mont. 476, 977 P.2d 974 (1999), the Montana Supreme Court upheld the validity of a stop based upon an informant's report that two men who had been fighting got into a pickup and that the driver was drunk because he could "barely walk." [5]

[¶ 14.] We hold that the tipster's observations here provided a reasonable suspicion that Scholl was driving while under the influence of alcohol. We perceive a distinction between observations at a fast food restaurant such as in *Miller, supra* or at convenience store as in *Stewart, supra* and observations at a bar where the likelihood of alcohol consumption is obviously enhanced. It requires no leap of logic or common sense to deduce that a person stumbling from a bar late in the evening and exhibiting difficulty getting into his vehicle may well be under the influence of alcohol and incapable of safely operating the vehicle. *See Roberts*, 977 P.2d at 981 (common sense must illumine court's review of whether officer had requisite suspicion to justify vehicle stop). Moreover, we find it important in cases of this nature that the basis of the tipster's knowledge or suspicion be communicated to law enforcement. As the Eighth Circuit noted in *Wheat*, "the primary determinant of a tipster's reliability is the basis of his knowledge[.]" *Wheat*, 278 F.3d at 734. Thus, in *J.L., supra*, where the tipster failed to explain how he knew about the gun or to supply any basis for believing he had inside information about the suspect, the

---

**5.** *See also State v. Summers*, No. 02 CA 7, 2002 WL 31185794 (Ohio Ct.App. Sept.27, 2002)(unpublished)(stop upheld where bartender/informant's information was based upon her observation of the driver's red watery eyes, his swaying on the way to the door, his stumbling off of an outside wheelchair ramp and his balancing himself on his car); *City of Rocky River v. Surovey*, No. 79380, 2002 WL 232882 (Ohio.Ct.App. Feb. 14, 2002)(unpublished)(stop upheld where informant observed driver staggering out of her pizza shop and having difficulty getting into his van).

Supreme Court invalidated the investigatory stop and search. Here, the basis of the tipster's knowledge was disclosed to law enforcement and yielded a reasonable suspicion that the suspect was driving while under the influence of alcohol. Thus, we hold that the quality of the tip was enhanced to a level permitting the vehicle stop.

[¶ 15.] Scholl strongly relies on this Court's decision in *Graf*, 508 N.W.2d 1 as authority for holding the stop of his vehicle invalid. However, *Graf* contains factual distinctions that led to the result in that case. While *Graf* did involve a vehicle stop based solely on an informant's tip, the tip was more vague than in this case. An anonymous citizen notified the Sioux Falls police that a "possible drunk driver in a large brown car" was heading west on an identified city street and provided the license number of the vehicle. However, unlike this case, the arresting officer did not proceed immediately to the location identified by the tipster, but proceeded to the area of the registered owner's residence and waited for thirty-four minutes until he saw the subject vehicle turn in front of him. He then followed the vehicle to the owner's residence about half a block away. During that time, he did not observe any traffic violations or erratic driving. After the vehicle was parked in the driveway, the officer confronted the driver and subsequent field sobriety testing led to his arrest for DUI.

[¶ 16.] Applying the same standards of reliability from *White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 that would subsequently be followed by the Supreme Court in *J.L.*, *supra* and by the Eighth Circuit in *Wheat*, *supra*, this Court found the informant's tip in *Graf* insufficient to support the vehicle stop. In that regard, the Court specifically noted that there was little content to the anonymous tip, that the caller said only that the driver was "possibly" intoxicated and that the caller described no erratic driving. The Court also noted that the officer made no attempt to verify the informant information by locating the car on the street identified by the informant and that the only facts corroborated by the officer were that the driver owned a brown automobile with the given license plate number. Because the tip failed to contain specific facts concerning driving conduct, failed to give detailed information to substantiate the tip and give it greater reliability and because no attempt was made to verify the location of the vehicle, this Court held the vehicle stop in *Graf* invalid.

[¶ 17.] The defects in *Graf* simply are not present here. The tip was not completely anonymous. The tipster provided the basis of his information and suspicion, *i.e.*, personal observation of the driver stumbling badly from a bar and having trouble getting into his vehicle. The tipster provided a complete description of the vehicle make and model, gave the color of the vehicle and its unique Nebraska license number. The tipster identified the location of the vehicle and the direction in which it was moving. The tipster kept in constant contact with dispatch and continually updated it on the location of the vehicle. Finally, within minutes of the first dispatch, the officer here proceeded to the location identified by the tipster and verified the informant information before bringing the subject vehicle to a stop. While the tipster did not describe specific driving conduct as a basis for the stop, as we have previously discussed, he did describe non-driving conduct that yielded a reasonable suspicion that the driver was driving while under the influence of alcohol. Based upon these distinctions, we do not find *Graf* persuasive here and reject it as authority in this particular case.

[¶ 18.] Based upon the totality of the foregoing circumstances, we hold that Officer Reinwald had a reasonable suspicion to stop Scholl's vehicle and that the stop was valid under the Fourth and Fourteenth Amendments.

[¶ 19.] Affirmed.

[¶ 20.] SABERS and KONENKAMP, Justices, concur.

[¶ 21.] GILBERTSON, Chief Justice and ZINTER, Justice, concur in result.

GILBERTSON, Chief Justice (concurring in result).

[¶ 22.] I concur with the result of this opinion but write separately to point out that the case principally relied upon by Scholl, *Graf v. State*, 508 N.W.2d 1 (S.D. 1993), should be overruled in light of today's decision and the rationale contained in *Florida v. J.L*, 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), and *United States v. Wheat*, 278 F.3d 722 (8thCir.2001).

[¶ 23.] In reaching its conclusion in *Graf* that the anonymous tip did not supply the requisite reasonable suspicion to support a vehicle stop, the majority applied the correct standard and considered the quantity and quality of the tip under the totality of the circumstances. 508 N.W.2d at 2 (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990)). Since this Court handed down *Graf*, however, the Eighth Circuit Court of Appeals decided *Wheat* wherein it addressed and clarified the factors relevant to this standard in the context of an anonymous tip alleging erratic driving:

First, the anonymous tipster must provide a sufficient quantity of information, such as the make and model of the vehicle, its license plate numbers, its location and bearing, and similar innocent details, so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the caller.

\*     \*     \*

The tip must also contain a sufficient quantity of information to support an inference that the tipster has witnessed an actual traffic violation that compels an immediate stop. A law enforcement officer's mere hunch does not amount to reasonable suspicion ... neither does a private citizen's.

278 F.3d at 731–32 (internal citation and footnote omitted). As articulated by Justice Sabers' dissent, the anonymous tip in *Graf* contained information that

1. a possible drunk driver;

2. was westbound on 10th Street;

3. in a large brown automobile;

4. identified by license plate 1E3312.

508 N.W.2d at 6 (Sabers, J., dissenting). Given the factors outlined in *Wheat*, it is likely that *Graf*, a 3–2 decision of this Court, would be decided differently today.

[¶ 24.] I also submit the result in *Graf* depended in large part upon the fact that the arresting officer did not personally observe any incidents of erratic driving. *See* 508 N.W.2d at 3 (noting that "Officer Schmit did not observe any erratic driving on Graf's part. The only facts corroborated by the police were that Graf owned a brown automobile with the given license plate number."). In *Wheat*, the Eighth Circuit specifically rejected this line of reasoning, observing:

A careful reading of the Supreme Court's Fourth Amendment jurisprudence suggests that this emphasis on the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions, as in the

case of erratic driving witnessed by another motorist.... Unlike with clandestine crimes such as possessory offenses, including those involving drugs or guns, where corroboration of the predictive elements of a tip may be the only means of ascertaining the informant's basis of knowledge, in erratic driving cases the basis of the tipster's knowledge is likely to be apparent. Almost always, it comes from his eyewitness observations, and there is no need to verify that he possesses inside information.

278 F.3d at 734 (internal citation omitted). Today, we also uphold a stop despite the fact that the arresting officer did not personally observe Scholl drive erratically or commit any traffic violations.

[¶ 25.] In sum, I agree with the result of the majority opinion that reasonable suspicion to stop Scholl's vehicle existed in this case. However, where the majority opinion chooses to distinguish *Graf*, I would overrule *Graf* to the extent it is inconsistent with this opinion and recent precedent. Failure to do so will only result in unnecessary confusion for attorneys and circuit courts confronted with traffic stops based upon anonymous tips alleging erratic driving.

[¶ 26.] ZINTER, Justice, joins this special writing.