#24992-a-PER CURIAM

**2009 SD 35**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,               Plaintiff and Appellee,

v.

SHANE ALLEN SATTER,                  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA  COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRADLEY G. ZELL
Judge

* * * *

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General
Pierre, South Dakota                 Attorneys for plaintiff
                                     and appellee.

DARREN J. MAGEE
Minnehaha County Public
 Defender's Office
Sioux Falls, South Dakota            Attorneys for defendant
                                     and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 23, 2009

OPINION FILED **05/13/09**

#24992

PER CURIAM

[¶1.]       A "concerned citizen" eyewitness told a police officer that he had seen two men drinking beer in a van parked next to the eyewitness in a parking lot. The police officer executed a traffic stop on the van after it was driven out of the parking lot. As a result of this stop, Shane Allen Satter was convicted of violating SDCL 32-23-1, driving a vehicle while having 0.08 percent or more BAC. Satter appeals his conviction, claiming that the eyewitness's tip did not create reasonable suspicion to conduct the traffic stop and, therefore, violated the Fourth Amendment of the United States Constitution. He argues that all of the evidence seized from this stop should have been excluded from trial.

## FACTS

[¶2.]       Officer Brian Warwick, of the Sioux Falls Police Department, was parked at the fire station at Madison and Kiwanis Avenues when a white pickup, bearing the logos of a Rapid City business, drove up to his patrol car. Officer Warwick rolled down his window, expecting that the out-of-town driver needed directions.

[¶3.]       The pickup driver told Officer Warwick that, while he was parked at the gas station across the street, a van had parked next to him in front of the convenience store. The citizen stated that the two occupants of the van were drinking beer from open containers, had the beer between their legs, and one of them had gone into the convenience store to purchase more beer. Officer Warwick asked the citizen to identify which vehicle he was referring to, and the citizen pointed to a van, which was clearly visible from Officer Warwick's position.

- 1 -

[¶4.] Within seconds of this identification, the van backed away from the convenience store, then left the parking lot. Officer Warwick was unable to obtain identifying information from the citizen before he left to follow the van. He followed the van for two blocks, saw no unsafe or erratic driving, but still executed a traffic stop on the van. The events that followed the traffic stop are irrelevant to this appeal.

[¶5.] Satter was charged with Driving Under the Influence. Before trial, Satter sought to suppress evidence seized after the traffic stop, alleging a violation of the Fourth Amendment. The circuit court admitted the evidence, finding that reasonable suspicion had been established from the citizen's statements.

## ISSUE

**Whether the information from the tipster alone provided reasonable suspicion to conduct a traffic stop in this situation.**

[¶6.] Satter argues that the unidentified citizen's statements did not have sufficient "indicia of reliability" to justify the stop because the police officer "did not corroborate any of the tipster's information and conducted the traffic stop based solely on the informant's tip." Further, because no identifying information was collected from the citizen, Satter contends that "there is no way to assess the reputation of the tipster or hold this person accountable should the allegations turn out to be untrue," and thus, the tip should be considered unreliable. Finally, Satter argues that the tip regarded an open container violation, not that the driver of the vehicle was impaired; therefore, public policy concerns about the dangers of drivers under the influence are not applicable when the police officer, in following up on the tip, did not observe impaired driving.

> The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. Although this protection generally requires probable cause to search, the requisite level of suspicion necessary to effectuate the stop of a vehicle is not equivalent to probable cause necessary for an arrest or a search warrant. All that is required is that the police officer has a reasonable suspicion to stop an automobile. Therefore, the factual basis needed to support a traffic stop is *minimal*.
>
> While the stop may not be the product of mere whim, caprice or idol [sic] curiosity, it is enough that the stop is based upon specific and articulable facts which taken together with rational inferences from those facts, reasonably warrant [the] intrusion.

State v. Scholl, 2004 SD 85, ¶6, 684 NW2d 83, 85 (quoting State v. Chavez, 2003 SD 93, ¶¶15-16, 668 NW2d 89, 95) (emphasis added).

> An informant's tip may carry sufficient 'indicia of reliability' to justify a [vehicle] stop even though it fails to rise to the level of the probable cause needed for an arrest or search warrant. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.

*Id.* (quoting State v. Olhausen, 1998 SD 120, ¶7, 587 NW2d 715, 717-718). "The ultimate determination of the existence of a reasonable suspicion to stop a vehicle is a question of law reviewed de novo." *Id.* (citing State v. Faulks, 2001 SD 115, ¶8, 633 NW2d 613, 617).

*Reasonable Suspicion – Indicia of Reliability*

[¶7.]	"Whether an *anonymous* tip suffices to give rise to reasonable suspicion depends on both the *quantity* of information it conveys as well as the *quality, or degree of reliability,* of that information, viewed under the *totality of the circumstances*." *Scholl,* 2004 SD 85, ¶9, 684 NW2d at 86 (quoting United States v. Wheat, 278 F3d 722, 726 (8thCir 2001)) (emphasis original and added).

*Anonymity*

[¶8.]     This case presents a somewhat different factual scenario than previous tipster cases considered by this Court and the United States Supreme Court.  These previous decisions have dealt with tipsters who make an anonymous telephone call to the police.  The tips are then dispatched to a patrol officer.  In this case, the tipster made direct, face-to-face contact with the patrol officer.

[¶9.]     The United States Supreme Court has not ruled on the distinction between face-to-face and telephonic tips or the effect this difference may have on the reliability of the tip.  However, the distinction has been anticipated.

> If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip.  An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring.

Florida v. J.L., 529 US 266, 276, 120 SCt 1375, 1381, 146 LEd2d 254, (2000) (Kennedy, J., concurring).

> Many cases have recognized the difference between in-person informants and anonymous calls.  *See, e.g.,* Florida v. J.L., 529 US 266, 276, 120 SCt 1375, 146 LEd2d 254 (2000) (Kennedy, J., concurring); Davis v. United States, 759 A2d 665 (DCApp 2000) (police officer had probable cause for a search after citizen informant who declined to give his name flagged down the officer and told him a man nearby in a wheelchair was selling crack out of his right shoe); United States v. Salazar, 945 F2d 47, 50-51 (2dCir 1991) ("[A] face-to-face informant must, as a general matter, be thought *more reliable than an anonymous telephone tipster*."); United States v. Sierra-Hernandez, 581 F2d 760, 763 (9thCir 1978) ("[A]lthough the informant did not identify himself by name, he would have been available for further questioning if the agent had judged the procedure appropriate.  Unlike a person who makes an anonymous

- 4 -

> telephone call, this informant confronted the agent directly.");
> United States v. Gorin, 564 F2d 159, 161 (4thCir 1977)
> ("[S]tandards of reliability should not prevent appropriate action
> when a victim of a crime immediately has contacted the police.
> That same analysis applies [when a witness informs the police
> in person about a crime].")...

United States v. Sanchez, 519 F3d 1208, 1214 (NM 2008) (emphasis added).

[¶10.] The tipster in this case was not completely or "truly" anonymous. *See Scholl,* 2004 SD 85, ¶12 n4, 684 NW2d at 87 n4; *Sanchez,* 519 F3d at 1214 ("That the police understandably did not take the time to obtain [the tipster's] personal information does not mean she was anonymous."); United States v. Jenkins, 313 F3d 549, 554 (10thCir 2002) ("A reasonable person . . . would realize that in all likelihood the police could, if they so chose, determine the person's identity, and could hold him responsible if his allegations turned out to be fabricated.").

[¶11.] The unidentified tipster approached Officer Warwick in person. The white pickup truck he drove bore the identifying logos of a Rapid City business. While the police officer did not obtain the tipster's identifying information and could not recall the name of the Rapid City business, the tipster made no effort to hide or conceal his identity.[1]

---

1.  Satter's arguments regarding the inability to hold an anonymous tipster accountable for potentially fabricated knowledge is inapplicable in the face-to-face context. Unlike the anonymous caller in *United States v. Reaves,* 512 F3d 123, 127 (4thCir 2008), upon which Satter relies for this proposition, the unidentified tipster in this case did not "studiously avoid[ ] providing information that would have allowed her identity to be traced. . . ." Here the tipster was not anonymous, but simply unidentified.

[¶12.]     While the face-to-face tip situation has not been considered in this Court's earlier tipster analyses, this is a relevant factor in the "totality of the circumstances" when assessing the reasonable suspicion necessary to conduct a vehicle stop. Because of the increased reliability of face-to-face tips, this factor weighs in favor of the officer's reasonable suspicion.

*Quantity of Information*

[¶13.]     In reviewing the quantity of information provided by a tip, both *Scholl* and *Wheat* considered a number of identifying facts provided by the tipster "such as the make and model of the vehicle, its license plate numbers . . . *so that the officer, and the court, may be certain that the vehicle stopped is the same as the one identified by the [tipster].*" *Scholl,* 2004 SD 85, ¶9, 684 NW2d at 86-87 (quoting *Wheat,* 278 F3d at 731) (emphasis added). In this case there was almost no danger of misidentification. The tipster identified the particular van by pointing directly at it, in the officer's presence. In this situation, the tipster provided a sufficient quantity of information.

*Quality of Information or Degree of Reliability*

[¶14.]     This Court has stated:

> With regard to assessing the quality or degree of reliability of an anonymous tip, the court observed that the "primary determinant of a tipster's reliability is the basis of his knowledge" and further observed that "in erratic driving cases the basis of the tipster's knowledge . . . [a]lmost always . . . comes from his eyewitness observations[.]" *Wheat,* 278 F3d at 734. From this, the court concluded that, "an anonymous tip conveying a contemporaneous observation of criminal activity whose innocent details are corroborated is . . . credible[.]" *Id.* at 735.

*Scholl,* 2004 SD 85, ¶10, 684 NW2d at 87. Furthermore, "[t]he time interval between receipt of the tip and location of the suspect vehicle [goes] principally to the question of reliability. . . ." *Id.* 2004 SD 85, ¶9, 684 NW2d at 87 (citing *Wheat,* 278 F3d at 731).

[¶15.] In the instant case, the tipster's basis of knowledge came from his direct observation of the occupants of the van, while they were parked in the lot and in plain sight of any observer.[2] The tipster immediately conveyed this information to the police officer. Because of the factual scenario, there were no innocent details left for the officer to corroborate. The only unknown facts were the elements of the violations, the possession of open containers and consumption of alcohol inside of the van.

[¶16.] The exigency of the circumstances did not permit the officer to obtain further information from the tipster. The conversation lasted approximately twenty seconds, because the identified van started to leave the convenience store parking lot after that point. Once the van began moving, the potential danger resulting from the occupants' consumption became more immediate. The tipster had relayed to the officer that he had witnessed the occupants *drinking* beer, not simply that they were in possession of open containers. Therefore, the officer faced a dilemma of either: 1) obtaining the tipster's identifying information, then attempting to

---

2. The tipster's knowledge did not come from some special, *insider* knowledge of the violations; nor were his observations made while the vehicles were moving in traffic, potentially increasing the risk of misidentification of the containers or the beverages consumed. The observations were made in a public location, during daylight hours.

track down the van, driven by a potentially intoxicated driver, in city traffic; or 2)
he could follow the van immediately.

> As to the risk that an anonymous tip might be a fiction intended to cause trouble for another motorist, the court determined that the risk of false tips is slight compared to the risk of not allowing the police to immediately conduct investigatory stops of potentially impaired drivers. In that regard, the court noted that erratic and possibly drunk drivers pose an imminent threat to public safety, that failure to stop them immediately risks sudden and potentially devastating accidents and, therefore, there is a substantial government interest in effecting such stops as quickly as possible.

*Scholl,* 2004 SD 85, ¶10, 684 NW2d at 87.

*Signs of Intoxication*

[¶17.]     Satter notes that neither the tipster nor the police officer observed the van driving in an erratic manner. Satter argues that there was no suggestion that the van or its occupants posed a risk to others. Therefore, he suggests "[t]his tip about open containers, standing alone, does not yield a reasonable suspicion that the driver was operating the vehicle under the influence, which takes away the public policy concerns about the dangers of drunk driving."

[¶18.]     In *Scholl,* this Court observed:

> Courts have come to different conclusions as to the sufficiency of the cause for a vehicle stop based solely upon an informant's observations of the *non-driving* behavior of a suspect. In *State v. Miller*, 510 NW2d 638 (ND 1994), the North Dakota Supreme Court invalidated a traffic stop based upon an informant's report of a possible drunk driver who could "barely hold his head up" in the drive-up lane of a fast food restaurant. In *Stewart v. State*, 22 SW3d 646 (TexApp 2000), the Texas Court of Appeals invalidated a stop based upon an informant's report of an intoxicated driver at a convenience store who fell down twice while getting into his vehicle. However, in *State v. Roberts*, 293 Mont 476, 977 P2d 974 (1999), the Montana Supreme Court upheld the validity of a stop based upon an informant's report

> that two men who had been fighting got into a pickup and that the driver was drunk because he could "barely walk."

2004 SD 85, ¶13, 684 NW2d at 88 (emphasis added). This Court went on to state, "We perceive a distinction between observations at a fast food restaurant such as in *Miller* . . . or at a convenience store as in *Stewart* . . . and observations at a bar where the likelihood of alcohol consumption is obviously enhanced." *Id.* ¶14. However, the distinctions made among these *locations* are not necessarily relevant to the instant case. Focusing on the *type* of establishment is not necessarily conclusive.

[¶19.] Satter's argument neglects the particular behavior observed by the tipster. The tipster saw not only open containers, but also the consumption of beer from those containers. The tipster also stated that one of the occupants was purchasing more beer from this convenience store. The observed "non-driving behavior" was not simply sleepiness, stumbling, or a similar behavior that might be explained by any number of physical ailments. Here the tipster observed the act of drinking itself and the possibility of further consumption.

[¶20.] To understate the point, like the bar in *Scholl* and unlike the convenience store in *Stewart*, in these circumstances "the likelihood of alcohol consumption is obviously enhanced." In the totality of the circumstances, it was a simple, rational inference for the police officer to suspect that the van driver was intoxicated.[3]

---

3.    It is irrational to suggest that an adult, licensed driver in this society is unaware that it is illegal to drink alcohol while driving, have open containers

(continued . . .)

**CONCLUSION**

[¶21.]    In the totality of these circumstances, given the increased reliability of face-to-face tips, the precise identification of the van, the strong basis of the tipster's knowledge, the immediacy with which he reported his observations, the lack of facts left to corroborate, and the minimal intrusion of a vehicle stop on the occupants' liberty compared to the potential, imminent threat of the observed behavior, this tip was sufficiently reliable to create reasonable suspicion.

[¶22.]    Affirmed.

[¶23.]    GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, and SABERS, Retired Justice, participating.

---

(. . . continued)

in a vehicle, or that a sober driver would openly and flagrantly defy these laws in a public place in broad daylight.