MANSFIELD, Justice
(dissenting).
I respectfully dissent. I believe the tip provided a sufficient basis for the stop of the vehicle under the standards we set forth in State v. Walshire and have reiterated here.
In Walshire, we upheld a stop based on an anonymous telephone tip that the defendant was driving in the median. We stated:
We believe the following factors distinguish this case from J.L.:
(1) In this case the informant revealed the basis for his knowledge — he was observing a crime in progress, open to public view; (2) in the present case, a serious public hazard [drunk driving] allegedly existed that, in the view of the Supreme Court, might call for a relaxed threshold of reliability; and (3) the intrusion on privacy interests [with a traffic stop] is slight, less than in a pat-down situation.
634 N.W.2d 625, 630 (Iowa 2001). I find the present case constitutionally indistinguishable from Walshire.
At 11:21 p.m. on June 16, 2010, the 911 call came in. The caller told the dispatcher that a “carload of Rock Valley merchants,” including people “that own Van Zee Enterprises,” were “loaded,” “sitting on curbside,” and getting ready to leave Doon for Rock Valley.[1] In response to questioning from the dispatcher, the caller confirmed they were drunk. He described them as “opening their doors to get the last passengers in and then they are leaving.” They were in a silver Suburban license plate BC229. They had been on a golf outing and, according to the caller, thought they were “home free.” The caller was not asked to provide further details or to give his name.
A summary of this information was passed along to the Rock Valley police. About ten minutes later, two Rock Valley police officers saw the vehicle arrive in town from the direction of Doon. They verified the license plate and description, and were told the vehicle was registered to Van Zee Enterprises with a Rock Valley address. They saw multiple people in the *213 vehicle. Although no traffic violations were observed, a decision was made to stop the vehicle. I believe that was a correct, not an unconstitutional, decision.
Three points about the tip should be noted. First, although the tipster did not say he had actually observed the group of intoxicated individuals get into the car, this is a pretty obvious inference from the call:
Dispatcher: Ok and where are they at right now?
Caller: In Doon, on curbside, and
Dispatcher: Like downtown or what?
Caller: Yeah.
Dispatcher: Ok.
Caller: They are opening their doors to get the last passengers in and then they are leaving.
A 911 dispatcher listening to this narrative would reasonably assume it was based on personal observation. See Kaysville City v. Mulcahy, 943 P.2d 231, 237 (Utah Ct. App.1997) (“That Olsen reported a ‘drunk individual’ without explaining why he thought the person was drunk does not by itself nullify reasonable suspicion”), abrogated on other grounds by State v. Saddler, 104 P.3d 1265, 1272 (Utah 2004).
Given the further details provided elsewhere in the call and the late hour (11:21 p.m.), it doesn’t require much in the way of inference to conclude that the tipster had seen the group stop in downtown Doon for drinks after their golf outing and was now watching them in their intoxicated state preparing to head home to Rock Valley. If he had not seen them close up, how would he know they had been on a golf outing that day?
It is true that unlike the tipster in Wal-shire who claimed to have seen erratic driving, the caller here described a group of drunk people getting into a car to drive it home. But since the crime is actually drunk driving, not erratic driving, I do not think that puts the Walshire stop on firmer constitutional ground. It is noteworthy that in both cases, the officers who stopped the vehicle did not actually see anything wrong with how the vehicle was being driven. And in Walshire, but not here, the tipster refused to give a name. 634 N.W.2d at 626.
Second, by the time of the stop in this case, the Rock Valley officers had corroborated several predictive statements in the call. They saw the silver Suburban arriving in Rock Valley -with the identified license plate from the direction of Doon, about ten minutes after the call. (We can take judicial notice that Rock Valley is eight miles driving distance from Doon.) Several people were in the car. The car was registered to Van Zee Enterprises with a Rock Valley address. The officers initiated a stop after confirming these details. See id. at 628 (stating that “ ‘[i]nde-pendent corroboration of the inculpatory details of a defendant’s tip is not mandatory’ ” (quoting State v. Markus, 478 N.W.2d 405, 408 (Iowa Ct.App.1991))).
I think the present case is comparable to one decided by the South Dakota Supreme Court. See State v. Scholl, 684 N.W.2d 83 (S.D.2004). There, an anonymous informant called police to report the defendant “leaving Scarlet O’Hara’s bar stumbling pretty badly and having problems getting into [his] Toyota Tacoma pickup.” Id. at 84 (internal quotation marks omitted) (alterations in original). The informant provided a license plate number, vehicle description, and location. Id. An officer found the truck where the informant said it would be, followed it for about eleven blocks, and “stopped the vehicle solely on the basis of the informant information.” Id. The officer had confirmed the “innocent details” such as license number and vehicle description, but did not witness any moving violations, erratic driving, or any *214 thing else suggesting the driver was impaired. Id. at 84, 86.
The court concluded the stop was valid because (1) the informant provided detailed information allowing the officer to confirm the identity of the vehicle it stopped and (2) the informant’s tip included sufficient details of possible criminal activity, namely, stumbling from a bar and difficulty getting into an automobile. Id. at 88-89. The stop was valid despite the informant’s lack of “specific examples of moving violations.” Id. at 88. The court noted that “[i]t requires no leap of logic or common sense to deduce that a person stumbling from a bar late in the evening and exhibiting difficulty getting into his car may well be under the influence of alcohol and incapable of safely operating his vehicle.” Id.
In another, more recent unnamed-informant case, the South Dakota Supreme Court again upheld a traffic stop of a vehicle even though the officer did not witness any evidence of impaired driving. State v. Satter, 766 N.W.2d 153, 158 (S.D.2009). There, an unnamed tipster approached an officer in person and pointed out a vehicle whose occupants he said possessed open containers and were drinking beer. Id. at 154. In upholding the stop, the court defended the officer’s choice to pursue the driver immediately, rather than stay and ascertain the tipster’s identity. “[T]he officer faced a dilemma of either: 1) obtaining the tipster’s identifying information, then attempting to track down the van, driven by a potentially intoxicated driver, in city traffic; or 2) he could follow the van immediately.” Id. at 157. The court also noted that the tipster’s observation of the act of drinking and the possibility of further consumption contained sufficient signs of intoxication to justify a traffic stop. Id. at 158; see also Lamb v. State, 269 Ga.App. 335, 604 S.E.2d 207, 208 (2004) (upholding a traffic stop based on a tip from a bartender who told authorities by phone “that a man who was too intoxicated to drive was leaving the restaurant, and that he would not let her call him a cab”); State v. Amelio, 197 N.J. 207, 962 A.2d 498, 502 (2008) (upholding a stop based on a tip containing a teenager’s bare assertion defendant was “drunk” and observing that “ ‘drunk’ has a commonly understood meaning and the signs of drunkenness are matters of common knowledge and experience”); State v. Lamb, 168 Vt. 194, 720 A.2d 1101, 1102-06 (1998) (holding that a traffic stop was “more than” justified where a 911 caller reported that the defendant was “very upset and intoxicated and was leaving a residence” because of the “impossibility that such information could have been supplied by anyone but a knowledgeable insider”).
This is not a case like Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In that case, a tipster provided only a description of an individual and his location and the allegation that the individual had a gun. Id. at 268, 120 S.Ct. at 1377, 146 L.Ed.2d at 258-59. There was “no predictive information” and the tip involved “concealed criminal activity.” Id. at 271-72, 120 S.Ct. at 1379, 146 L.Ed.2d at 260-61. Here, by contrast, the tip involved a description of criminal activity taking place out in the open — i.e., intoxicated individuals at curbside in downtown Doon getting into a vehicle — and the tipster added predictive information, such as when the vehicle was leaving and where it was going (Rock Valley).
As we have already pointed out, this case is functionally similar to the erratic driving cases, which the majority agrees were correctly decided. The only difference is that the criminal activity involved intoxicated individuals getting into a car to drive away instead of erratic driving.
*215 What J.L. emphasizes is that when the criminal activity is concealed, the tip must provide more than just a description of the alleged criminal and his location. There must be further detail demonstrating the tipster’s basis for knowledge of the criminal activity. But when the criminal activity is out in the open, firsthand contemporaneous observations are sufficient. The reality is that here we have publicly observable criminal activity, plus additional verifiable details provided by the caller that would indicate the caller likely had been observing the situation for some time (i.e., in the bar) before it moved onto the public curbside — which in fact was the case.[2]
By contrast, Harris v. Commonwealth, 276 Va. 689, 668 S.E.2d 141 (2008), cited by the majority, involved neither of these factors. The tip was merely of an “intoxicated driver” and his name, vehicle, location, and direction. Id. at 144. Unlike here, the caller did not relay firsthand, contemporaneous observations, such as the description of a group of “drunks” first “sitting on curbside” in downtown Doon and then “opening their doors to get the last passengers in.” Further, the caller in Harris provided no details that demonstrated intimate knowledge, whereas here the caller advised the dispatcher where these people worked and lived, where they planned to go after they got into the car, and what they had been doing that day. Id.; see also Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301, 310 (1990) (emphasizing that the tipster had provided predictive information that demonstrated intimate familiarity).
Third, the tip came in the form of a 911 call. The risk that a 911 call would be used purely to harass someone rather than to report a potential crime seems to me a decreasing one. By statute and administrative regulations, Iowa emergency call centers use “enhanced 911” which “[a]uto-matically provides voice, displays the name, address or location, and telephone number of an incoming 911 call and public safety agency servicing the location.” Iowa Code § 34A.2(5)(6) (2009); see also Iowa Admin. Code r. 605-10.7 (providing for implementation of enhanced wireless 911 service). All of Iowa’s ninety-nine counties have implemented enhanced wireless 911, according to the Iowa Homeland Security and Emergency Management Division. See Iowa Homeland Security & Emergency Management, Enhanced 9-1-1 (E-911), http://www.iowahomelandsecurity. org/programs/E_911.html (last visited Jun. 20, 2013). “[T]he State stands on firm constitutional ground when it treats the anonymous 9-1-1 caller in the same fashion as it would an identified citizen informant who alerts the police to an emergent situation.” State v. Golotta, 178 N.J. 205, 837 A.2d 359, 367, 373 (2003) (upholding a DUI traffic stop based on a 911 call reporting erratic driving and noting such calls are not truly anonymous). I think the average citizen has developed an understanding from watching television that 911 calls are frequently traceable. In fact, the tipster was tracked down here.
*216 Not only are 911 tipsters generally identifiable, they are criminally liable if they knowingly make false tips. See Iowa Code § 718.6(2) (“A person who telephones an emergency 911 communications center knowing that the person is not reporting an emergency or otherwise needing emergency information or assistance commits a simple misdemeanor.”); see also id. § 718.6(1) (providing that knowingly reporting false information about a felony or serious or aggravated misdemeanor is itself a serious misdemeanor). Calling 911 is no way to make a false report and get away with it. In this sense, 911 callers have the incentive to provide reliable information or else face criminal consequences. See Golotta, 837 A.2d at 367 (noting that “it is hard to conceive that a person would place himself or herself at risk of a criminal charge by making” a phony 911 call (internal quotation marks omitted)).
The majority says, “[W]e commend the dispatcher who took the 911 call.” I don’t follow what the majority means by this statement. The entire thrust of the majority opinion is that the dispatcher did not do an adequate job, and should have kept the caller on the line longer and asked additional questions. I disagree with imposing this burden on 911 operators and would uphold the stop.
For the foregoing reasons, I respectfully dissent.
CADY, C.J., and WATERMAN, J., join this dissent.

. The majority says that the tipster "did not know for sure where the vehicle was going.” I disagree. The transcript of the call is reproduced in full in the majority opinion. The caller made it clear the individuals were "ready to leave to Rock Valley.”

. The majority says, "Any person at the bar would be able to surmise that at 11:20 p.m. on a Wednesday night, these four well-known businessmen from Rock Valley would most likely be going home at that time of night.” I think this proves the point I am making, that the details indicate the caller had been observing these individuals inside “at the bar” and now was seeing them get into the car drunk. It is possible, of course, that these persons had not been consuming a significant quantity of alcoholic beverages (despite being in a bar until 11:21 p.m.) and the tipster was lying about their intoxicated condition. But the law only requires reasonable suspicion.